**TOTAL PETROLEUM, INC., Appellant,**

v.

**Gary J. DAVIS, d/b/a Gary J. Davis Oil Company, Appellee.**

No. 86–2392.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1987.

Decided June 25, 1987.

As Amended on Denial of Rehearings Aug. 12, 1987.

735

Arthur L. Smith, Washington, D.C., for appellant.

James E. Reeves, Caruthersville, Mo., for appellee.

Before LAY, Chief Judge, ARNOLD and WOLLMAN, Circuit Judges.

LAY, Chief Judge.

In *Total Petroleum, Inc. v. Davis,* 788 F.2d 476 (8th Cir.1986), we affirmed a jury verdict and general damages of $732,000 for Gary Davis on his counterclaim for fraudulent misrepresentation but reversed and remanded for a new trial on Total's claim against Davis. In the subsequent proceeding, Davis raised the defense of estoppel by fraud, claiming that for purposes of assessing the amount of his liability, Total should be held to the truth of its fraudulent misrepresentation that Davis' company owed Total $333,705.31 on September 21, 1981. This amount did not reflect additional petroleum products that Davis had received before that date. The district court summarily found for Davis on this issue and allowed Total to set off only $18,143.54 from Davis' damage award for money he owed for petroleum products received after September 21. The court awarded Davis postjudgment interest on the amount remaining, $713,856.46, and denied prejudgment interest to Total because the amount of its claim was not ascertainable with reasonable certainty prior to judgment in the proceeding after remand. Total appeals.

## Equitable Estoppel

The relevant facts are set out in detail in our first opinion. Briefly, Total sued Davis to collect $173,742.46 it alleged he owed for petroleum products received by his company after September 21, 1981. Davis counterclaimed, alleging that Total had fraudulently misrepresented the amount his company owed at the time Davis bought out his partner and assumed the rights and responsibilities incident to distributor marketing agreements with Total.[1] After Davis bought out his partner on September 21, 1981, Total informed him that he owed an additional $155,598.92 for petroleum products received before September 21. Davis paid this amount under protest and allegedly directed Total to apply the money to purchases made after September 21 and not to the newly-discovered indebtedness. Total applied the payment to Davis' account. During the next two months, Davis obtained petroleum products from Total valued at $173,742.46, which he refused to pay. Total sued to recover the debt, Davis counterclaimed, and following our remand, the district court held that Total's proven fraud estops it from collecting the entire $173,742.46. The court set off $18,143.54 from Davis' damages, the difference between $173,742.46 and $155,598.92.[2]

At the subsequent proceeding,[3] the district court determined that Total's proven fraudulent misrepresentation estopped it from now claiming that the amount it represented to Davis was incorrect, 647

1. Prior to September 21, 1981, Davis and Bill Rushin were partners in the Rushin-Davis Oil Co. Before the bank would loan Davis the funds to buy out Rushin, it required assurance that Total would permit Davis to take over the partnership's distributor marketing agreements. Davis contacted Total and was told that to assume the partnership distribution agreements and release Rushin from liability, Davis must pay off the partnership's entire debt to Total. On September 17, 1981, Total represented this amount to be $333,705.31. Davis secured a loan, paid this amount, and bought out Rushin's interest. Actually, Rushin-Davis owed Total an additional $155,598.92 for petroleum products received between September 1 and September 21. Davis' counterclaim for fraudulent misrepresentation was based on this discrepancy and sought damages for his harm, which included the loss of his home and business.

2. In the first trial, the jury found for Davis on his counterclaim and against Total on its claim. Because of procedural errors, however, this court remanded to the trial court both the question of Davis' liability and the amount owed.

3. Total contends that the trial court ignored this court's mandate to hold a new trial on Total's claim against Davis. We do not agree. Following remand, the court denied Total's motion for summary judgment, set a trial date, and directed the parties to file briefs. Two weeks before trial, the court made certain evidentiary rulings. The parties waived a jury and tried the case to the court on September 30, 1986. The court thereafter made findings of fact and conclusions of law, relying in part on the record in the first trial. The court's docket sheet for the case contains an entry for September 30, 1986, which reads: "Parties present for non-jury trial; arguments of counsel made. Both parties to prepare proposed judgments." Total also complains that the district court improperly relied on the record from the first trial. This argument is undercut by the fact that on September 12, 1986, Total moved the court to take judicial notice of the prior proceedings.

F.Supp. 1059. In other words, Total must accept the "truth" of its misrepresentation for purposes of assessing the amount of Davis' liability. Total argues that notwithstanding the finding of a fraudulent misrepresentation, it is entitled to a set-off of the full $173,742.46 because the doctrine of election of remedies prevents Davis from relying upon inconsistent factual allegations first to prove Total's fraud and then to reduce the amount of his liability. The effect of the trial court's order allowing only the $18,143.54 set-off, Total maintains, improperly permits Davis to change in midstream the factual allegations he successfully relied upon in his counterclaim.[4]

■ Although the election of remedies doctrine is not applicable in this case, we agree with Total that Davis is attempting to rely upon inconsistent factual allegations in support of his estoppel by fraud defense.[5] Total seeks to prevent Davis from denying a state of facts that he alleged in his counterclaim to be true and were judicially determined to be true. Under these circumstances, Davis is precluded by the doctrine of equitable estoppel from disavowing the factual position he successfully maintained in his counterclaim.

■ Equitable estoppel prevents a party from denying a state of facts that he has previously asserted to be true if the party to whom the representation was made has acted in reliance on the representation and will be prejudiced by its repudiation. *Konstantinidis v. Chen,* 626 F.2d 933, 937 (D.C.Cir.1980). The doctrine estops a party who has full knowledge of the facts from accepting the benefits of a transaction, contract, or order and subsequently taking an inconsistent position to avoid corresponding obligations. *DeShong v. Seaboard Coast Line R.R.,* 737 F.2d 1520, 1522 (11th Cir. 1984); *see also* 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice, ¶ 0.405[8], at 238–39 (2d ed. 1984) [hereinafter cited as Moore's Federal Practice].[6]

4. Total stated in its brief that Davis' damage award includes the $155,598.92 that Davis paid under protest. Because the jury returned a general verdict and damages, there is no way for either Total or this court to know precisely what damages were included or how the jury arrived at the amount awarded.

5. Election of remedies involves inconsistent means of enforcing a single right. For example, a plaintiff may sue for damages for conversion of property or may bring a replevin action to recover the property itself, but not both. *Grogan v. Garner,* 806 F.2d 829, 839 (8th Cir.1986). Davis is not asking for inconsistent remedies. He has maintained throughout a suit for damages based upon a theory of fraudulent misrepresentation.

6. Two related doctrines are collateral estoppel and judicial estoppel. Collateral estoppel prevents relitigation of factual matters that were fully considered and decided in a prior proceeding. *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 466–67 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982). A question of fact put in issue in the first litigation and directly determined in the judicial proceeding as a ground of recovery cannot be disputed in a subsequent suit between the parties or their privies, even if the second suit is on a different cause of action. Moore's Federal Practice, *supra,* ¶ 0.405[3], at 194–95. Thus, collateral estoppel operates to prevent repetitive litigation. *Konstantinidis,* 626 F.2d at 937 n. 6. Judicial estoppel, unlike equitable estoppel, does not require reliance or prejudice before a party may invoke it. *Id.* at 937. This distinction reflects the difference between the policies served by the two doctrines. Equitable estoppel protects litigants from less than scrupulous opponents; judicial estoppel protects the integrity of the judicial process.

Collateral estoppel does not appear to be appropriate in this action because the case does not involve a subsequent lawsuit in the typical sense. Davis' counterclaim was compulsory; he was not free to bring a separate action against Total once Total had filed its claim. Fed.R. Civ.P. 13(a); C. Wright, *Federal Courts,* § 79, at 530 (4th ed. 1983). This court affirmed Davis' jury verdict on his counterclaim but remanded for a new trial on Total's claim. In our opinion, we contemplated a single damage award once the validity of Total's claim against Davis was determined. *See Total,* 788 F.2d at 484 n. 7. This is not a case, therefore, in which repetitive litigation is a concern.

Judicial estoppel is also not appropriate because this is not a case in which the judicial forum or process has been abused. The purpose of judicial estoppel is to protect the integrity of the judicial process. As we read the case law, this is tantamount to a knowing misrepresentation to or even fraud on the court. Further, the doctrine is not followed in a majority of jurisdictions, *Konstantinidis,* 626 F.2d at 938, partly because of its vague definition and partly because of a perceived conflict with the rule allowing parties to plead alternative legal theories. *See* Fed.R.Civ.P. 8(e)(2).

Davis' counterclaim was based upon an implicit admission that Rushin-Davis in fact owed Total *more* than $333,705.11. Total relied on this assertion when it defended by denying any misrepresentation and attempting to show that Davis had failed to prove the essential elements of his counterclaim. Total was unsuccessful and now owes Davis on his judgment. Davis is estopped from denying the truth of his prior, proven factual allegation for purposes of reducing the amount he owes for petroleum products admittedly received. The district court erred when it failed to set off from Davis' damages Total's claim for $173,742.46.

### Postjudgment Interest

■■■ Total also claims that the court erred in allowing Davis postjudgment interest on his damage award from April 4, 1985, the date of the original judgment, instead of October 6, 1986, the date of this court's first opinion affirming Davis' damages on his counterclaim. Postjudgment interest awards in federal cases are governed by 28 U.S.C. § 1961, which provides that interest "shall be allowed on any money judgment in a civil case recovered in a district court," to be "calculated from the date of the entry of the judgment." When a district court's judgment in favor of a party is affirmed in whole or in part on appeal, the date of entry of the judgment under § 1961 is the date on which the original judgment was entered in the initial trial court proceeding and not the date of affirmance on appeal or the date of judgment on remand. *Turner v. Japan Lines, Ltd.*, 702 F.2d 752,

754 (9th Cir.1983); *see also Buck v. Burton*, 768 F.2d 285, 287 (8th Cir.1985) (adopting *Turner v. Japan Lines, Ltd.* in case reversing district court's judgment notwithstanding the verdict and reinstating jury verdict and damages). In our first opinion, we affirmed the jury's verdict and damages on Davis' counterclaim.[7] We have already held that the $732,000 award must be reduced by $173,742.46, the amount of Total's claim. Davis is entitled to postjudgment interest on the remaining $558,257.54 from April 4, 1985, at the applicable rate under § 1961.

### Prejudgment Interest

■■■ Total finally urges error in the trial court's refusing to award it prejudgment interest on Davis' debt. State law governs the question of prejudgment interest. *California & Hawaiian Sugar Co. v. Kansas City Terminal Warehouse Co.*, 788 F.2d 1331, 1333 (8th Cir.1986). In Missouri, the issue is controlled by statute. *See* Mo.Ann. Stat. § 408.020 (Supp.1987). Missouri law provides for prejudgment interest whenever the amount due is liquidated or, although not strictly liquidated, is readily ascertainable by reference to recognized legal standards. *St. Joseph Light & Power Co. v. Zurich Ins. Co.*, 698 F.2d 1351, 1355 (8th Cir.1983). A dispute as to liability does not make the amount unliquidated for purposes of denying prejudgment interest. *Knight v. DeMarea*, 670 S.W.2d 59, 64 (Mo.App.1984).

Total claims that the invoices it supplied to Davis for petroleum products received after September 21, 1981, establish a liquidated amount subject to an award of pre-

**7.** Total argues that absent a mandate from this court directing the district court to award postjudgment interest, the court had no power to award it. Federal Rule of Appellate Procedure 37 states:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest.

The first sentence makes it clear that where a money judgment is affirmed in the court of appeals, the interest that attaches by force of law upon its initial entry is payable as if no appeal had been taken, whether or not the mandate makes mention of interest. The second sentence refers to cases in which a judgment is modified or reversed, the most common example being the reversal of a judgment notwithstanding the verdict and reinstatement of a jury verdict. In these cases, *Briggs v. Pennsylvania R.R.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), and Fed.R.App.P. 37 require a mandate from the appellate court directing an allowance of postjudgment interest.

judgment interest. For two reasons, we disagree. First, although a recognized legal standard exists for measuring Total's damages, the *amount* of those damages was uncertain, in light of Davis' estoppel by fraud defense, until the district court ruled after remand on the validity of Davis' position or until this court reviewed the case again on appeal. *See Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.*, 756 F.2d 629, 635–36 (8th Cir.1985).[8] Second, when questioned by the district court, Total's counsel admitted that there was a question as to the amount of Davis' debt. After our remand, the parties stipulated to certain facts but could not agree on the amount Davis owed. Davis disputed the $173,742.46 amount and claimed that at most he owed $18,143.54. Of this amount, Davis also challenged a credit adjustment of $14,000, which Total claimed it did not owe. Given these uncertainties, we cannot say that the amount of Total's damages was either liquidated or ascertainable at the time the district court made its ruling.

Davis' award of $732,000 is reduced by $173,742.46, leaving $558,257.54. He is entitled to postjudgment interest at the applicable rate on this amount from April 4, 1985. Costs are assessed to Davis.

---

**8.** In our first opinion, we stated that Total's evidence regarding the amount of Davis' debt was not so clear as to entitle it to a directed verdict on the issue. Even if Total had moved for judgment notwithstanding the verdict, we still would have remanded the case for a trial solely on the issue of damages. *See* 788 F.2d at 480.