# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 05-1882

—————

Samuel Stallings,       *
      *
      Appellant,       *
      *    Appeal from the United States
      v.       *    District Court for the
      *    Eastern District of Missouri.
Hussmann Corporation;       *
Brian Groninger,       *
      *
      Appellee.       *

—————

Submitted: November 16, 2005
Filed: May 12, 2006

—————

Before SMITH, HEANEY, and BENTON, Circuit Judges.

—————

SMITH, Circuit Judge.

Samuel L. Stallings sued his employer, Hussmann Corporation ("Hussmann") and Brian Groninger, for wrongful termination in violation of the Family and Medical Leave Act ("FMLA"). The district court granted summary judgment to Hussmann and Groninger. Stallings argues that the district court erred in applying the doctrine of judicial estoppel; erred in concluding that Hussmann and Groninger were entitled to summary judgment on Stallings's FMLA claims; and erred in denying Stallings's motion for partial summary judgment because Stallings established that Hussmann considered his FMLA leave as a reason to terminate his employment. We reverse the

district court's application of judicial estoppel and its entry of summary judgment in Hussmann's favor.

## I. *Background*

Stallings worked as a general laborer for Hussmann. The terms of Stallings's employment, including the rate and method of his compensation, were determined by a collective bargaining agreement between the United States Steelworkers' of America and Hussmann ("Bargaining Agreement"). The Bargaining Agreement provides that an employee shall be terminated if "the employee gives [a] false reason for a leave of absence. . . ." Hussmann allows employees to take medical leave as required under the FMLA. In accordance with the FMLA, Hussmann allows "intermittent" FMLA leave for an employee to care for a family member when "medically necessary." Hussman eventually terminated Stallings for giving false reasons for use of leave time.

In December 2001, Stallings requested FMLA leave to care for his father. Stallings requested the leave through the Hussman Human Resources Office ("HRO"), which granted his request. Stallings subsequently submitted a request for an extension of the initial FMLA leave through June 2002, which the HRO also granted. Stallings took intermittent FMLA leave during both the initial period and the extended period.[1] In June 2002, Stallings applied to have his prior intermittent FMLA leave extended for another six-month period for "patient care." Stallings submitted a Certificate of Health Care Provider in connection with this request. Hussmann's FMLA policy, consistent with the FMLA, provides that "FMLA leave may be taken intermittently whenever medically necessary to care for a seriously ill family member." The HRO granted his request for a third time.

---

[1]Stallings does not allege that Hussmann took any adverse action against him as a result of his use of intermittent FMLA leave during these periods. In addition, on other occasions when Stallings was disciplined for absences, he was informed of his rights to take leave under the FMLA.

At Hussmann, supervisors grant vacation time on a seniority basis and on the basis of company production needs. In February of each year, Hussmann policy and the Bargaining Agreement require employees to request vacation time for the entire year, if the employee is to exercise seniority rights for scheduling purposes. Senior workers receive priority when conflicts arise as to requested vacation. In February 2000 and February 2001, Stallings requested and was granted the first three weeks of August as vacation time.

In January or February 2002, Groninger became Stallings's supervisor. In February 2002, Stallings, as in the two prior years, requested the first three weeks of August 2002 for his vacation. Because of Stallings's seniority standing, however, Groninger could only schedule Stallings for one week of vacation in August. Groninger never approved Stallings to take vacation for the second and third weeks of August 2002. Groninger was never involved in deciding whether Stallings was entitled to FMLA leave.

Sometime prior to August 2002, Stallings met with Groninger to again request the second and third weeks of August as vacation time. Groninger denied his request because there were no available slots. Stallings then told Groninger that he intended to take off the second and third weeks of August 2002 anyway as FMLA leave. Stallings contends that he told Groninger that he would use the leave to provide care for his father who was unable to care for himself. Groninger contends that Stallings only told him he was using the leave to help his father move. Groninger reminded Stallings that he would have to call in each workday to an automated answering system to report his absence.

Stallings did not report to work for the first three weeks of August. The first week of work was scheduled vacation, and Stallings called the Hussmann automated

answering system each day he was off work from August 12–26, 2002, and reported that he was using FMLA leave.

After Stallings returned to work, Louis Stralka, a Human Resources Generalist in the HRO, summoned Stallings to a meeting through Groninger. The parties dispute what transpired at this meeting. Stallings denies telling Stralka that he moved his father while off work from August 12–26, 2002. Stallings does admit that he "stated [his] reason why [he] was out on family medical leave" and that he told Stralka that he "was moving, providing for his [father's] needs, painting, cutting the grass, et. cetera." During the meeting, Stallings admitted that he did not help his father move because the move was cancelled in early August, only a few days before his vacation time began. When Stralka asked Stallings why he did not return to work when he learned that he was not going to help his father move, Stallings responded, "Because I was on vacation."

Stallings told Stralka that he spent the two weeks he was on FMLA leave performing maintenance on his father's home because the City of St. Louis had issued a citation to his father to get the house up to Code. The City, however, dismissed the citation against Stallings's father in June 2002. In addition, the citation did not relate to painting or yard maintenance but to open storage containers on the property. Stallings admitted that he had siblings and his father's wife in the area who could also help his father, that he could have performed these tasks on the weekends and at night, and that he did not need to take time off work to perform the tasks around his father's house.

Stralka reported to Richard Kurt, the Director of the HRO, that he believed Stallings was lying about the reason he was absent for two weeks. Kurt made the decision to terminate Stallings for "calling in FMLA for non-FMLA reasons, fraudulent and [sic] misuse of the leave of absence policy, violation of company policies in connection therewith and causing falsification of the company's records

-4-

in this regard." Stallings admitted that he had no evidence that Groninger decided to terminate him or that anyone other than Kurt made the decision to terminate him on October 1, 2002.

Following his termination, Stallings filed a grievance with the union, but the union eventually withdrew the grievance. Stallings then filed a complaint on December 18, 2002, with the United States Department of Labor, alleging that his termination violated the FMLA. The Department of Labor, however, found in favor of Hussmann, concluding that Stallings was properly terminated for fraudulently taking leave.

At the time of Stallings's termination on October 1, 2002, he was a debtor in a Chapter 13 bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District of Missouri. At no time during the pendency of Stallings's bankruptcy case did he disclose his claims against Groninger or Hussmann to the bankruptcy court. On March 11, 2003, the bankruptcy court granted the bankruptcy trustee's motion to dismiss the case. The bankruptcy case was closed on June 25, 2003.

On September 12, 2003, Stallings filed suit against Hussmann and Groninger, alleging an interference claim and a retaliation claim under the FMLA. The parties filed cross motions for summary judgment. The district court granted Hussmann's and Groninger's motion for summary judgment, holding that (1) Stallings's claims were barred by the doctrine of judicial estoppel because Stallings failed to disclose his cause of action against Hussmann and Groninger in his bankruptcy proceedings; (2) even if his claims were not barred by the doctrine of judicial estoppel, Stallings failed to rebut Hussman's and Groninger's non-discriminatory reason for terminating him; and (3) Stallings could not show that his FMLA rights were interfered with, restrained, or denied in any way by Hussmann and Groninger.

## II. *Discussion*

Stallings raises three arguments on appeal: (1) that the district court erred in dismissing all of his claims based upon the doctrine of judicial estoppel; (2) that the district court erred in concluding that had it not dismissed all of Stallings's claims based on the doctrine of judicial estoppel, it would have granted Hussman's and Groninger's motion for summary judgment because Stallings failed to prove pretext for the FMLA claims; and (3) that the district court erred in denying Stallings's motion for partial summary judgment because Stallings established that his use of FMLA leave to care for his father was considered as a reason to terminate his employment.

## A. *Judicial Estoppel*

Stallings first argues that the district court erred in dismissing all of his claims based upon the doctrine of judicial estoppel because application of the three factors delineated in *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), weighs against the application of the doctrine.

## 1. *Applicable Standard of Review*

We have not previously articulated the proper standard of review when reviewing a district court's application of the judicial estoppel doctrine. *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 700 (8th Cir. 2003). A majority of our sister circuits that have addressed the issue apply the abuse of discretion standard. *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30–31 (1st Cir. 2004) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)); *Talavera v. Sch. Bd.,* 129 F.3d 1214, 1216 (11th Cir. 1997); McNemar v. Disney Store, Inc., 91 F.3d 610, 616–17 (3d Cir. 1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir.1996); *United States v. Garcia,* 37 F.3d 1359, 1367 (9th Cir. 1994)); *but see United States v. Hook*, 195 F.3d 299, 305 (7th Cir. 1999) (applying a de novo standard of review).

The First Circuit offers four bases for reviewing a district court's application of the judicial estoppel doctrine for an abuse of discretion. *Alternative*, 374 F.3d at 30. First, the Court in *New Hampshire* "explained that 'judicial estoppel is an equitable doctrine invoked by a court at its discretion.'" *Id.* at 30–31 (quoting *New Hampshire*, 532 U.S. at 750). "Second, deferential review often is appropriate for matters in which the trial court is 'better positioned . . . to decide the issue in question.'" *Id.* at 31 (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)). The district court is in a better position to decide if judicial estoppel applies because "[d]etermining whether a litigant is playing fast and loose with the courts has a subjective element [and] [i]ts resolution draws upon the trier's intimate knowledge of the case at bar and his or her first-hand observations of the lawyers and their litigation strategies." *Id.* Third, because judicial estoppel has an "amorphous nature" and requires flexibility, the flexible abuse of discretion standard should apply. *Id.* Finally, "the other courts of appeals to have addressed this question have settled unanimously on abuse of discretion review." *Id.*

Finding the First Circuit's reasoning persuasive, we hold that the abuse of discretion standard applies to this court's review of a district court's application of the judicial estoppel doctrine. "The fact that this case arises in the summary judgment context does not affect our decision to review the trial court's determination for abuse of discretion" because the abuse of discretion standard "typically applies to threshold evidentiary determinations made in connection with summary judgment motions." *Id.* Therefore, we will not overturn a district court's discretionary application of the judicial estoppel doctrine "unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the proper factors." *Id.* at 32.

## 2. *The Doctrine of Judicial Estoppel*
The doctrine of judicial estoppel "protects the integrity of the judicial process." *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 738 n.6 (8th Cir. 1987). A court invokes

judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court. *Id*. "Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first." *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp*., 4 F.3d 605, 609 (8th Cir. 1993). Therefore, a party that takes a certain position in a legal proceeding, "and succeeds in maintaining that position," is prohibited from thereafter assuming a contrary position "simply because his interests have changed," especially if doing so prejudices the party "who acquiesced in the position formerly taken by him." *New Hampshire*, 532 U.S. at 748 (internal quotations and citations omitted).

"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id*. at 750. Three factors, while not "an exhaustive formula for determining the applicability of judicial estoppel," aid a court in determining whether to apply the doctrine. *Id*. at 751. The three factors are as follows:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id*. at 750–51 (internal quotations and citations omitted).

In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Coastal*, 179 F.3d at 208. A debtor's failure to list a claim in the "mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). For example, in *United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909 (8th Cir. 2001), two former employees of a company who were terminated from their job filed a *qui tam* lawsuit against the company. *Id.* at 912. The company subsequently filed a motion for summary judgment, alleging that the claim was prohibited under judicial estoppel principles because the two employees, who were married, failed to list a claim against the company as an asset in their prior bankruptcy proceeding in which the bankruptcy court discharged them from bankruptcy. *Id.* at 913. We upheld the district court's finding that the employees were judicially estopped from asserting the claim against the company because they had represented to the bankruptcy court, through their failure to disclose the *qui tam* claim, that they did not possess the claim. *Id.* at 917.[2]

The second *New Hampshire* factor requires that the bankruptcy court have adopted the debtor's position. *Superior*, 374 F.3d at 335. For example, where the bankruptcy court issues a "no asset" discharge, the bankruptcy court has effectively adopted the debtor's position. *Id.* Similarly, when a bankruptcy court discharges the debtor's debts based on information the debtor provided in the schedules but thereafter vacates and dismisses the debtor's bankruptcy after learning that the debtor was concealing claims, the court's original discharge of the debt is sufficient acceptance of the debtor's position to provide a basis for judicial estoppel. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001).

---

[2]*Gebert* was decided three months after the Court's decision in *New Hampshire*. In *Gebert*, however, this court did not specifically address the three recommended factors outlined in *New Hampshire* nor cite *New Hampshire*.

Under the final *New Hampshire* factor, the debtor's non-disclosure of the claim must not be inadvertent and must result in the debtor gaining an unfair advantage. *Superior*, 374 F.3d at 335–36. Three examples illustrate the third factor. First, where a debtor files suit against a party, alleging that the party was responsible for the debtor filing bankruptcy, but failed to refer to the claim in any of its bankruptcy petitions, the debtor is judicially estopped from subsequently asserting the pre-petition claim that was not disclosed to the bankruptcy court. *Payless Wholesale Distrib., Inc. v. Alberto Culver, Inc.*, 989 F.2d 570, 571 (1st Cir. 1993); *see also Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003) (prohibiting an employee who filed for bankruptcy because a demotion resulted in less pay from filing suit against her employer for violation of the FMLA because the employee failed to list the discrimination suit as an asset). The court will not allow the debtor to conceal its claims, get rid of its creditors "on the cheap," and start over with a "bundle of rights." *Payless*, 989 F.2d at 571. Because the debtor obtained judicial relief on the representation that no claims existed, the debtor is prohibited from resurrecting such claims and obtaining relief on the opposite basis. *Id*.

Second, when a debtor does not disclose potential claims against its creditors in the bankruptcy petition, the interests of both the creditors and the bankruptcy court are impaired. *Coastal*, 179 F.3d at 208. In *Coastal*, a week after filing a bankruptcy petition, a Chapter 11 debtor initiated an adversary proceeding against its largest unsecured creditor. *Id*. at 202. Shortly thereafter, the debtor executed sworn bankruptcy schedules, not disclosing its potential $10 million claim against the creditor. *Id*. The Fifth Circuit held that the debtor was judicially estopped from asserting its claims against the unsecured creditor. *Id*. at 208. "A debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Id*. at 210 (emphasis in original).

Finally, a debtor who files his bankruptcy petition, subsequently receives a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), and then fails to amend his bankruptcy petition to add his lawsuit against his employer as a potential asset is estopped from bringing the lawsuit because the debtor "knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court." *DeLeon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003).

Notably, judicial estoppel does not apply when a debtor's "prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court." *Ryan v. Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (internal quotations and citation omitted). "Although it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in bankruptcy proceedings gains an advantage," the specific facts of a case may weigh against such an inference. *Id*. at 363. A rule that the "requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding [would] unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies." *Id*. at 364. Careless or inadvertent disclosures are not the equivalent of deliberate manipulation. *Id*. Courts should only apply the doctrine as an extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice. *Id*. at 365.

Here, the district court failed to apply the three factors outlined in *New Hampshire*; therefore, we will apply each factor to determine if the district court abused its discretion in dismissing Stallings's claims based on judicial estoppel.

First, as in *Gebert*, Stallings's failure to amend his bankruptcy schedules to include his claims against Hussman and Groninger represented to the bankruptcy court that no such claims existed. Therefore, his subsequent filing of the FMLA

claims against Hussmann and Groninger are "clearly inconsistent" with his position in bankruptcy court that no such claims existed.

Under the second factor, however, no judicial acceptance of Stallings's inconsistent position occurred. Unlike *Superior* and *Hamilton*, the bankruptcy court never discharged Stallings's debts based on the information that Stallings provided in his schedules. Instead, the bankruptcy court granted the bankruptcy trustee's motion to dismiss the case.

Finally, Stallings would not derive an unfair advantage over Hussmann and Groninger if allowed to bring the FMLA claims against them. Stallings was already a Chapter 13 debtor when Hussmann terminated him from his job; therefore, he could not have known at the time he filed his bankruptcy petition to disclose such claims. In addition, unlike the debtors in *Payless* and *Bargar* who alleged that the defendants' wrongdoings led to their bankruptcy filings, Stallings does not allege that Hussmann's or Groninger's wrongdoing caused him to file for bankruptcy. Also, while the debtors in *Coastal*, *Oneida*, and *Hay* brought claims against creditors that were involved in their bankruptcy, thereby seeking to gain a substantial advantage over them by subsequently bringing suits against them after their debts were discharged, neither Hussmann nor Groninger are Stallings's creditors. Furthermore, unlike the debtor in *DeLeon* who was issued a right-to-sue letter by the EEOC after filing for bankruptcy, Stallings received an adverse ruling by the United States Department of Labor, which found that Stallings was properly terminated for fraudulently taking leave. Therefore, we cannot say that Stallings clearly knew at the time his bankruptcy was pending that he had a viable claim against Hussmann and Groninger.

Upon weighing the *New Hampshire* factors, we conclude that the district court abused its discretion in applying the judicial estoppel doctrine to the present case.

## B. FMLA Claims

Stallings next argues that the district court erred in concluding that, alternatively, it could grant Hussman's and Groninger's motion for summary judgment because Stallings failed to prove pretext. Stallings claims that he established pretext regarding one of Hussman's and Groninger's reasons for his discharge. We review a district court's grant of summary judgment de novo. *Putman v. Unity Health Sys.*, 348 F.3d 732, 733 (8th Cir. 2003).

The FMLA provides job security to employees who must miss work because of their own illnesses, to care for family members, or to care for new babies. 29 U.S.C. § 2612(a)(1)(A)–(D). The FMLA provides eligible employees up to 12 workweeks of unpaid leave during any 12-month period. *Id*. § 2612(a)(1). An employee must provide notice to an employer that he plans to take FMLA leave. *Id*. § 2612(e)(2).

Two types of claims exist under the FMLA: (1) "interference" or "(a)(1)" claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) "retaliation" or "(a)(2)" claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights. 29 U.S.C. § 2615(a)(1)–(2). Stallings alleges both an interference claim and a retaliation claim against Hussmann and Groninger and asserts that the district court improperly analyzed his FMLA claims as solely a claim for FMLA retaliation when he brought claims for both interference and retaliation.

### 1. *Interference Claim*

An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercised of any right contained in the FMLA. 29 U.S.C. § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29

C.F.R. § 825.220(b). An employer's action that deters an employee from participating in protected activities constitutes an "interference" or "restraint" of the employee's exercise of his rights. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). "A violation of this provision creates what is commonly known as the interference theory of recovery." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005). When an employer attaches negative consequences to the exercise of protected rights, it has "chilled" the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so. *Bachelder*, 259 F.3d at 1124.

In an interference claim, an "employee must show only that he or she was entitled to the benefit denied." *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) (stating that the burden to establish an interference claim is less than that of a retaliation claim, which requires a showing that the employer's actions were motivated by an impermissible retaliatory animus). This court has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent. *Throneberry*, 403 F.3d at 979. An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave.[3] *Id.* "[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge *during* FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." *Id.* at 980 (emphasis added). Thus, where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery. *Id.* at 979 (holding that strict liability does not apply to an (a)(1) claim).

---

[3]When analyzing an interference claim under the FMLA, this court has rejected the application of burden-shifting scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001).

-14-

Confusion often arises as to whether an employee's FMLA claim "is really about interference with his substantive rights, not discrimination or retaliation." *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent. *Id.* "Although in some circumstances, a given set of facts will fall clearly into either (a)(1) or (a)(2), it appears that the lines between the two categories are not hard and fast."*Dillaway v. Ferrante*, No. Cir. 02-715 (JRT/JSM), 2005 WL 23109696, at *5 (D. Minn. Dec. 9, 2003) (unpublished).

In the present case, we conclude that the district court did not improperly analyze Stalling's FMLA claim as one of retaliation instead of interference. First, Hussmann granted every request Stallings made to take FMLA leave; therefore, Stallings has failed to establish that Hussmann and Groninger denied him a benefit to which he was entitled because he received all of the FMLA leave he requested. With regard to Groninger, Stallings failed to present evidence that Groninger was involved in the decision to terminate him. Second, neither Hussmann nor Groninger ever impeded Stallings's use of FMLA leave. Third, only after Stallings returned from FMLA leave did Hussmann question whether Stallings fraudulently used his FMLA leave and fire Stallings. Therefore, Stalling's claim is fundamentally a claim for retaliation and should be analyzed as such.

## 2. *Retaliation Claim*

The FMLA prohibits employers from discriminating against an employee for asserting his rights under the Act. *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002) (citing 29 U.S.C. § 2615(a)(2)). "This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action." *Id.* "Basing an adverse employment action on an employee's use of leave . . . is therefore actionable." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002).

While Stallings argues that he has presented direct evidence of Hussmann's discriminatory intent because he was terminated for "calling in FMLA for non-FMLA reasons," we find no such evidence. First, the Bargaining Agreement specifically states that an employee is subject to termination for giving a false reason for taking a leave of absence. Second, Stallings failed to present any evidence that Hussmann or Groninger admitted to discriminating against him because he used his FMLA for a legitimate purpose. Therefore, his retaliation claim must be analyzed under the *McDonnell Douglas* burden-shifting framework. Because neither party disputes that Stallings established a prima facie case of discrimination under *McDonnell Douglas*, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its challenged actions. *McDonnell Douglas*, 411 U.S. at 802. The defendant's burden "is not onerous and the showing need not be made by a preponderance of the evidence." *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 860 (8th Cir. 2005). Here, Hussman contends that it fired Stallings because it reasonably believed that Stallings was lying about why he took off work the second and third weeks of August.

Once the employer comes forward with evidence of a reason other than retaliation for the employee's discharge, the employee is "left with 'the opportunity to demonstrate that the proffered reason is not the true reason for the employment decision.'" *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 4560 U.S. 248, 255 (1981)). The employee may demonstrate pretext by two different methods. "First, a plaintiff may succeed 'indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id*. (quoting *Smith*, 302 F.3d at 834). Under this method, the employee must rebut the employer's "underlying factual claims" by establishing that the employer's explanation has no basis in fact. *Id*.

Second, the plaintiff may prove pretext "'directly by persuading the court that a [prohibited] reason more likely motivated the employer.'" *Id*. (quoting *Burdine*, 450 U.S. at 256). Under this method, the employee rebuts "the employer's ultimate factual

claim regarding the absence of retaliatory intent." *Id.* at 1121. The employee must demonstrate "that sufficient evidence of intentional retaliation exists for a jury to believe the plaintiff's allegations and find that the proffered explanation was not the true motivating explanation." *Id.* Thus, the employee "may concede that the proffered reason for the termination, *would have been* a sufficient basis for the adverse action while arguing that the employer's proffered reason was not the true reason for the action." *Id.* (emphasis in original).

An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies. *Smith*, 302 F.3d at 834–35.

Here, Stallings asserts that he established pretext because (1) a genuine issue of material fact exists as to whether Stralka "reasonably believed" that Stallings was lying to him regarding his activities while on leave because Stallings denied stating to Stralka that he moved his father while on FMLA leave and (2) Stralka began looking into Stallings's use of leave only three days after Stallings returned from leave and terminated him for "calling in FMLA for non-FMLA reasons."

As we review Stallings's retaliation claim, we are mindful that we do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995). Instead, this court's task is to "decide whether the record reveals issues of material fact that would prevent the entry of summary judgment in favor of [the defendant]." *Wallace*, 415 F.3d at 860.

Construing the facts in light most favorable to Stallings, we find that a genuine issue of material fact exists as to whether Stallings told his employer that he intended to take FMLA leave both to move his terminally ill father *and* assist with his father's personal and medical needs.[4] Stallings testified that he informed Groninger that he intended to take FMLA leave to move his father and to provide for this father's care. He also testified that while the plans to move his father changed shortly after his FMLA leave commenced, he still provided for his father's needs by cutting the grass, painting, retrieving his father's medicine, dressing his father, cooking for his father, driving his father, and paying his father's bills. Stallings admits telling Stralka that he did not move his father; however, he also maintains that he also told Stralka that he provided for his father's needs during his FMLA leave.

Therefore, if Stallings told his employer of his twofold mission prior to taking his FMLA leave and subsequently confirmed to his employer that he did provide for his father's needs while on FMLA leave, then Stallings's failure to move his father would not justify the defendants in reasonably believing that Stallings was lying about why he took FMLA leave.

Because the court's "function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), we hold that the district court erred in granting summary judgment to Hussmann and Groninger on Stallings's FMLA retaliation claim.

---

[4]Because we find a genuine issue of material fact exists regarding whether Stallings told his employer that he intended to take FMLA leave both to move his terminally ill father *and* assist with his father's personal and medical needs, we hold that the district court did not err in denying Stallings's motion for partial summary judgment.

### III. *Conclusion*

Accordingly, we hold that while the district court did not err in granting summary judgment to Hussmann and Groninger on Stalling's FMLA interference claim, it did abuse its discretion in applying judicial estoppel and erred in granting summary judgment to Hussmann and Groninger on Stalling's retaliation claim. Therefore, we reverse the district court and remand for proceedings consistent with this opinion.

_____