EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

MERCHANTS STATE BANK,
Defendant.

No. CIV. 07–4091–KES.

United States District Court,
D. South Dakota,
Southern Division.

April 22, 2008.

Ethan M.M. Cohen, Jean P. Kamp, John C. Hendrickson, Equal Employment Opportunity Commission, Chicago District Office, Chicago, IL, for Plaintiff.

Thomas K. Wilka, Hagen, Wilka and Archer, P.C., Sioux Falls, SD, for Intervenor Plaintiff Richard Engel.

Deanne Watts Hay, Ron D. Martinek, Parker & Hay, LLP, Topeka, KS, Michael A. Henderson, Cadwell, Sanford, Deibert & Garry, LLP, Sioux Falls, SD, for Defendant.

## ORDER GRANTING MOTION FOR LEAVE TO INTERVENE

KAREN E. SCHREIER, Chief Judge.

Richard Engel, the party on whose behalf the Equal Employment Opportunity Commission (EEOC) commenced this lawsuit, moves to intervene and proceed as a plaintiff in this action. Defendant opposes the motion. The motion is granted.

### FACTUAL BACKGROUND

Engel worked for defendant as a custodian and courier. In September 2004, he was diagnosed with metastatic prostate cancer and began undergoing treatment, including chemotherapy. Engel was released to work in late September 2004 and he returned to work for defendant, working September 24 through September 26, 2004, as well as October 1 through October 25, 2004. Engel was readmitted to the hospital in late October 2004 and was released in early November 2004. On or about November 8, 2004, Engel provided defendant with a release to work from his doctor. Engel asserts that despite his work release, he was not allowed to return to work but was told to come back only after he had completed his chemotherapy. Engel further asserts that he tried to return to work on December 5, 2004, after the completion of his chemotherapy and was told that his custodian position had been filled during his absence but that he could return to his courier position if he had a release from his doctor. Engel indicates that he declined defendant's offer.

On January 20, 2005, Engel filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court in the District of South Dakota. Approximately three months later, on April 26, 2005, the bankruptcy court issued an order discharging Engel ·from his debts. On June 8, 2005, the trustee's report indicated no assets and on July 12, 2005, the bankruptcy court entered an order discharging the trustee. Prior to the order discharging the trustee, on July 6, 2005, Engel filed his charge of discrimination against defendant with the EEOC; however, Engel failed to include this potential claim against defendant in his initial bankruptcy petition. On June 29, 2007, the EEOC filed this lawsuit against defendant alleging defendant terminated Engel's employment as a custodian because of a perceived disability in violation of the Americans with Disabilities Act (ADA).

### DISCUSSION

#### I. Right to Intervene

Defendant argues that Engel lacks standing and, as a result, he does not meet the standards to intervene. More specifically, defendant argues that Engel is not the real party in interest because all rights and obligations belonging to him at the time of his bankruptcy filing, including the claim in this lawsuit, became the property of the bankruptcy estate. Engel responds that he has standing to intervene because both he and the bankruptcy trustee satisfy the test of a real party in interest because

his claim for special damages greatly exceeds the debts which were discharged in bankruptcy and his claim also seeks damages for emotional distress and punitive damages. Additionally, the EEOC argues that Engel is a real party in interest because he retains an interest in obtaining injunctive relief against defendant and retains an interest in reinstatement. The EEOC further asserts that these interests are separate and distinct from any interest in the litigation held by the bankruptcy estate.

■ As a threshold matter, a proposed intervenor must have Article III standing. *Curry v. Regents of the Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir.1999). Standing under Article III of the Constitution requires that a would-be litigant make a showing of three elements: "(1) an injury in fact, which is an invasion of a legally protected interest that is concrete, particularized, and either actual or imminent; (2) causation; and (3) redressability." *Id.*

■ Here, Engel alleges that he was injured when he was terminated from employment based upon his disabilities, that the termination proximately caused his loss of income and other economic losses, and that a successful ADA lawsuit against defendant will remedy his injury. The court need not decide whether Engel has standing in relation to the claims for monetary damages because Engel has standing in relation to obtaining injunctive relief and reinstatement. These interests are separate from any interest in the litigation held by the bankruptcy estate. *See, e.g., Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir.2003) (stating that the debtor's claim for injunctive relief "would have added nothing of value to the bankruptcy estate") and *Burnes v. Pemco*

*Aeroplex, Inc.*, 291 F.3d 1282, 1289 (11th Cir.2002) (stating that the debtor's "undisclosed claim for injunctive relief offered nothing of value to the estate and was of no consequence to the trustee or the creditors").

■ Because Engel has standing in relation to obtaining injunctive relief and reinstatement, the court must determine whether Engel meets the standards for intervention. Under Federal Rule of Civil Procedure 24(a),

On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Therefore, the court is required to permit intervention if two elements are satisfied: (1) the application is timely; and (2) a federal statute confers an unconditional right to intervene.

■ In deciding whether the motion to intervene is timely, courts should consider (1) how far the proceedings have progressed; (2) the proposed intervenor's reason for delay in seeking intervention; and (3) the possible prejudice to the parties already in the proceeding if the court allows the intervention. *Nevilles v. EEOC*, 511 F.2d 303, 305 (8th Cir.1975). Defendant does not dispute that Engel's motion is timely. Further, the parties are only in the initial stages of discovery.[1] According-

---

1. The record indicates that defendant has responded to EEOC's first set of interrogatories and first request for production of documents.

ly, under the circumstances of this case, the court finds that Engel's motion for leave to intervene is timely.

■ Because Engel's motion is timely, the court must consider whether Engel has an unconditional right to intervene under § 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1). Section 706(f)(1) states in pertinent part that "[t]he person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission...." 42 U.S.C. § 2000e–5(f)(1). In fact, several courts have determined that this statute provides a party who filed the EEOC charge and upon which the EEOC's action is based an unconditional and absolute right to intervene in the action. *EEOC v. Missouri Pac. Ry. Co.*, 493 F.2d 71, 74 (8th Cir.1974) (stating that "§ 2000e–5(f)(1) speaks only in terms of intervention—the absolute right of the charging party to intervene if the Commission elects to file suit within 180 days"); *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 273 F.Supp.2d 260, 263 (E.D.N.Y.2003) (determining that the individual who filed a charge with the EEOC had an unconditional right to intervene with regard to her Title VII claims); *EEOC v. Rekrem, Inc.*, 199 F.R.D. 526, 529 (S.D.N.Y.2001) (determining that the charging parties have an "unconditional right to intervene ... with regard to the Title VII claims"); and *EEOC v. Pac. Maritime Ass'n*, 188 F.R.D. 379, 380 (D.Or.1999) (deciding that a charging party has a statutory right to intervene in an EEOC Title VII action).

Here, Engel is the aggrieved person because he is the person who filed a charge with the EEOC and the EEOC's lawsuit is based upon his charge. Therefore, under the facts of this case, Engel has an unconditional right to intervene in this case. Because Engel has standing in relation to injunctive relief and reinstatement and has fulfilled the requirements for intervention, he has the right to intervene in this case.

## II. Judicial Estoppel

Defendant also argues that Engel's failure to disclose his potential claim that defendant violated the ADA in his bankruptcy proceeding precludes him from bringing this claim after he was discharged from bankruptcy. Defendant argues that as a result, the doctrine of judicial estoppel bars Engel from asserting any right to this claim. Engel responds that the doctrine of judicial estoppel does not apply because at the time he filed his bankruptcy petition, he was unaware of his potential ADA claim and he did not initiate his EEOC charge before the discharge of his debts. Engel further argues that the fact that the bankruptcy trustee was discharged is irrelevant because the trustee retains the right to reopen the bankruptcy. The EEOC responds that the fact that at the time his bankruptcy was pending Engel had not brought a lawsuit against defendant demonstrates that his failure to include his potential claim in his bankruptcy petition was inadvertent rather than intentional and, therefore, judicial estoppel does not apply to this case.

■ "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) (quoting 18 *Moore's Federal Practice* § 134.30 (3d ed. 2000)). Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Id.* at 750, 121 S.Ct. 1808 (internal quotations omitted). The purpose of judicial estoppel is to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the

exigencies of the moment." *Id.* (internal quotations omitted).

■ Factors to consider include: (1) whether the party's later position was "clearly inconsistent" with its earlier position; (2) whether the party "has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808. These three factors, while not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," aid a court in determining whether to apply the doctrine. *Id.* at 751, 121 S.Ct. 1808. The Eighth Circuit has recognized and applied these three factors in a case involving judicial estoppel relating to the omissions in bankruptcy filings. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047–49 (8th Cir.2006).

### A. Inconsistent Positions

■ As to the first judicial estoppel factor, the court must determine whether the party's subsequent position is inconsistent with its previous position. A debtor in bankruptcy has a duty to disclose all legal interests in property in his bankruptcy petition and filings. 11 U.S.C. § 521(a). The bankruptcy estate includes all legal or equitable interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a). Causes of action for monetary damages are property of the bankruptcy estate. *United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 913 (8th Cir.2001). But in a Chapter 7 bankruptcy proceeding, assets of the bankruptcy estate include only those causes of action that have accrued prior to filing of

the bankruptcy petition. *Harms v. Cigna Ins. Cos.*, 421 F.Supp.2d 1225, 1228 (D.S.D. 2006). "[A] claim accrues before filing of a bankruptcy petition if all of the elements of the cause of action had occurred as of the time that the bankruptcy case was commenced." *Id.* at 1229 (internal quotation omitted).

■ "A debtor's failure to list a claim in the 'mandatory bankruptcy filings is tantamount to a representation that no such claim existed.'" *Stallings*, 447 F.3d at 1047 (citation omitted). Moreover, "[i]n the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.*

■ Here, Engel's subsequent position is inconsistent with his prior position. At the time Engel filed his voluntary petition for Chapter 7 bankruptcy, he was no longer working for defendant. Because Engel was no longer employed by defendant before he filed bankruptcy, all of the elements of defendant's alleged ADA violation had occurred prior to his bankruptcy filing. Accordingly, the alleged claim accrued before he filed his bankruptcy petition.

Engel failed to include his potential ADA claim against defendant in his bankruptcy petition. Engel's failure to include his potential claim against defendant in his bankruptcy schedule represented to the bankruptcy court that no such claim existed. Therefore, his motion for leave to intervene in the case the EEOC brought against defendant is "clearly inconsistent" with his position in bankruptcy court that no such claim against defendant existed.

### B. Judicial Reliance

■ As to the second judicial estoppel factor, the court must determine whether

judicial acceptance of Engel's inconsistent position occurred. This factor is satisfied if the bankruptcy court adopted the debtor's position. This occurs, for example, when the bankruptcy court discharges the claims under the belief that no claims exist outside those cited on the schedules. *See Stallings,* 447 F.3d at 1048. This idea is reinforced by the bankruptcy courts' heavy reliance on accurate disclosures statements. *See Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1286 (11th Cir.2002). *See also* 11 U.S.C. § 521 (listing debtor's duties).

Here, the bankruptcy court relied on Engel's inconsistent position. On January 3, 2005, Engel filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Based upon the record it had before it, the bankruptcy court issued an order discharging Engel of debts pursuant to 11 U.S.C. § 727. Docket 26–3. Engel failed to set forth his potential claim against defendant in his bankruptcy schedule. Accordingly, the bankruptcy court discharged Engel's debts based on the information that Engel provided in his schedules. By doing so, the court necessarily accepted Engel's inconsistent position.

**C. Intentional Failure to Disclose Resulting in an Unfair Advantage**

■ As to the third judicial estoppel factor, the court must determine whether the debtor's nondisclosure of the claim was done intentionally and resulted in the debtor gaining an unfair advantage. In this regard, the Eighth Circuit has determined that the doctrine of judicial estoppel does not apply when a debtor's earlier position was asserted "because of a good-faith mistake rather than as part of a scheme to mislead the court." *Stallings,* 447 F.3d at 1049 (citation omitted). In fact, the unique

facts of a case may weigh against the inference that a debtor who does not disclose an asset in bankruptcy proceedings receives an advantage. "A rule that the 'requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding [would] unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies.'" *Id.* (citation omitted). Importantly, "[c]arelessness or inadvertent disclosures are not the equivalent of deliberate manipulation." *Id.*

■ In this case, Engel represents that he did not know about the EEOC when the bankruptcy was filed on January 18, 2005. He explains that prior to working for defendant, he never came into contact with employment law issues because he worked as a self-employed auditor for 33 years. Further, during the years he worked for defendant, he never saw any posters from the Department of Labor describing employee rights and remedies under state and federal law. Affidavit of Engel, Docket 29, at 3. He states that he learned about the EEOC from his son-in-law, Michael Botts, who is an attorney, in early June 2005, which is after he was discharged from bankruptcy.[2] Subsequently, he contacted the EEOC and the EEOC advised him to send his complaint in writing to it as soon as possible. As a result, he signed a complaint with the EEOC against defendant on July 6, 2005. *Id.* at 4.

Accordingly, the facts in this case indicate that Engel failed to include his potential claim against defendant in his bankruptcy petition because he was unaware that he may have a claim against defen-

---

**2.** Botts confirms that Engel did not know what the ADA was and did not appreciate the effect of filing an ADA complaint until after he received his discharge in bankruptcy. Affidavit of Botts, Docket 29, at 2.

dant when he filed his petition. In fact, he did not even know about the ADA and the role the EEOC plays in relation to the ADA until after he was discharged from bankruptcy, which precluded him from amending his bankruptcy schedule. On the record before the court, no concrete facts have been asserted that demonstrate that Engel acted as part of a scheme to mislead the court. This is especially true in light of the fact that Engel suggested that his bankruptcy case be reopened because he wants his creditors to get paid. *See* Affidavit of Engel, Docket 28, at 3. Under the unique facts of this case, the court finds that Engel's failure to include his potential claim against defendant in his bankruptcy petition was not intentional and, as a result, application of the doctrine of judicial estoppel is inappropriate.

The Eighth Circuit has specifically indicated that judicial estoppel should only be applied "as an extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice." *Id.* Viewing the record as it exists, the court does not find that Engel intentionally asserted inconsistent positions and that those inconsistent positions would result in a miscarriage of justice. Accordingly, it is hereby

ORDERED that Engel's motion for leave to intervene (Docket 18) is granted.