# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

Nos. 99-2853 / 99-2859

———————

| | | |
|---|---|---|
| Sheri Sawyer Madison, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | On Remand from the United |
| v. | * | States Supreme Court. |
| | * | |
| IBP, Inc., | * | |
| | * | |
| Defendant-Appellant. | * | |

———————

Submitted: November 6, 2002
Filed: June 6, 2003 (corrected June 19, 2003)

———————

Before McMILLIAN and MURPHY, Circuit Judges, and BOGUE,[1] District Judge.

———————

MURPHY, Circuit Judge.

This case is before the court on remand from the Supreme Court for further consideration in light of <u>National Railroad Passenger Corp. v. Morgan</u>, 122 S. Ct. 2061 (2002). <u>See</u> <u>Madison v. IBP, Inc.</u>, 122 S. Ct. 2583 (2002). The Supreme Court accepted jurisdiction over this case as a result of a petition for certiorari filed by Sheri Sawyer Madison.

———————

[1] The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

Both parties earlier appealed to this court from a judgment entered in the district court in Madison's favor. We affirmed her award for compensatory damages, backpay, and benefits based on sex and race discrimination, retaliation, and constructive demotion during her employment at IBP, Inc. See Madison v. IBP, Inc., 257 F.3d 780 (8th Cir. 2001). We vacated her award of punitive damages, however, and remanded that part of her case for a new trial because the instructions on the federal limitations period did not comport with then existing circuit law.

Madison filed her petition for writ of certiorari on the question "whether a plaintiff who proves a continuing violation of her civil rights under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq, and 42 U.S.C. § 1981, is entitled to recover punitive damages for conduct occurring outside the statute of limitations." The Supreme Court decided Morgan on June 10, 2002, and on June 17 it granted a writ of certiorari in Madison's case, vacated the judgment, and remanded for further consideration.

Madison then moved for a partial remand to the district court for lifting of a stay of execution on her judgment for compensatory damages and related fees and costs. She argues that she is entitled to enforce that judgment because it was not affected by Morgan or the Supreme Court's order. She asserts in addition that Morgan permits reinstatement of her punitive damage awards. IBP opposes her motion for partial remand, as well as her arguments for reinstatement. It contends that the entire case should be remanded for a new trial.

Both sides seek to take advantage of the Supreme Court's remand to renew and bolster their original arguments on appeal. After having had the benefit of oral argument, several rounds of briefing, and responses to written questions submitted to counsel, we conclude that the proper application of Morgan lies between the contrasting positions advocated by the parties.

I.

Sheri Sawyer Madison is a Caucasian woman married to an African American man; both are employed by IBP. The detailed evidence produced before the jury in this case presented an unusual record of pervasive harassment. See Madison, 257 F.3d at 785–91. Almost from the time Madison began working at IBP in 1989, she experienced repeated acts of harassment and discrimination based on her sex and her interracial family. Workers called her derogatory names, offensively touched and fondled her, and made derogatory racist comments about her husband and children, including that she had "ruined herself" by marrying a black man and having biracial children. One coworker referred to her children as "fucking niggers" and suggested that they could be taken care of by "lick[ing] their lips and stick[ing] them on the wall" or "let[ting] them jump on the bed and put[ting] velcro on the ceiling." Madison was picked up against her will and carried around the plant, and a coworker simulated sodomy on her while bending her over a vat. Workers modeled male genitalia out of cutting scraps and placed them on the conveyor belt so they would pass in front of Madison and other women on the line. Supervisors told Madison that women did not belong in a packinghouse and refused to let her learn new jobs because they considered them to be "men's work."

Harassing behavior frequently occurred in front of supervisors who did nothing to discipline the offenders and who also joined in some of the activity, even when Madison was forced to leave the floor in tears. Some supervisors told Madison that this treatment was just part of the job and she would have to learn to deal with it if she wanted to advance. All employees who complained of illegal discrimination or harassment were asked to sign a form which resulted in a "counseling for sexual harassment" notation being placed in their personnel files, while no such notations were made in the files of the perpetrators.

Madison complained to management about the abusive treatment to which she was subjected, but no efforts were made to stop the perpetrators and she suffered retaliation from her complaints. Eventually she felt forced to take several constructive demotions in order to escape the harassment and discrimination. By the time of trial, she had applied for at least twenty three promotions. There was evidence that she had been denied the positions because there was a pervasive attitude of hostility towards women workers and because key managers were biased against women and interracial relationships. See Madison, 257 F.3d at 789. On January 13, 1995, she filed a charge of sexual discrimination with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission (EEOC), which was amended to include race discrimination on April 3, 1996.

After receiving a right to sue letter from the EEOC, Madison filed this sexual and racial discrimination action in September 1996, claiming that IBP had violated Title VII, § 1981, and the Iowa Civil Rights Act (ICRA). See id. at 791. At trial Madison presented much evidence to prove her claims, and they were all submitted to the jury. The parties disagreed about the permissible recovery periods, however, and Madison proposed a uniform cutoff date for all claims. The jury was instructed that damages could be awarded for illegal conduct which occurred after January 13, 1993, or two years before Madison filed her charge with the EEOC and the Iowa Civil Rights Commission. The jury returned its verdict in February 1999 in favor of Madison on her claims of sex and race discrimination and harassment, retaliation, and constructive demotion. It awarded her $266,750 in emotional distress damages, $76,667 in backpay and benefits, and $2,069,000 in punitive damages. After making adjustments to the damage awards, the district court ordered entry of judgment in Madison's favor in the total amount of $1,638,417. See id. at 791–92.

Both parties appealed from the judgment in the district court. IBP contested the emotional distress damages, the admission of evidence of harassment of other employees, the submission of punitive damages to the jury, and the jury instructions

on the recovery periods for compensatory and punitive damages. In her cross appeal, Madison argued that § 1981a(b)(3) places an unconstitutional cap on Title VII damages and that the district court improperly applied that statute in adjusting her damage awards. The United States intervened to support the constitutionality of the statute. Id. at 793.

This court issued its decision on the appeals in June 2001. We held that Madison had proved a continuing violation of her civil rights and was entitled to recover damages under ICRA for the entire period of that continuing violation. We concluded that her proof entitled her to recover compensatory damages under ICRA for emotional distress in the total amount of $266,750 ($110,000 for sexual discrimination and harassment, $155,000 for racial discrimination, and $1750 for constructive demotion). See Iowa Code § 216.6 (2002). We also affirmed the award of $76,667 in backpay and benefits under ICRA. See Iowa Code §§ 216.6, 216.11 (2002). We found no error with the instructions and rejected IBP's argument that Madison's claims under Iowa law should be decided under the Eighth Circuit limitations rule for federal damages.

We observed that Iowa had declared its own rule for the recovery period in Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n, 453 N.W.2d 512 (Iowa 1990). In Hy-Vee the Iowa Supreme Court adopted the continuing violation doctrine, permitting recovery for the entire period an employee's rights have been violated if at least one act of illegal discrimination occurred within the 180 day period before a complaint was filed with the Iowa Civil Rights Commission. See id. at 530–31. Although Madison could recover compensatory damages under ICRA, Iowa law does not permit punitive damages in employment cases. See City of Hampton v. Iowa Civil Rights Comm'n, 554 N.W.2d 532, 537 (Iowa 1996). Madison could therefore only hope to recover punitive damages on her federal law claims.

We decided that it had not been improper to submit punitive damage issues to the jury under Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999), because there was sufficient evidence that managerial employees had acted with malice or reckless disregard for Madison's civil rights. The court had erred in instructing the jury on the recovery periods for punitive damages, however, by permitting recovery for acts occurring after January 13, 1993. Under Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164 (8th Cir. 1995) (en banc), the court should have instructed that Madison could only recover damages under Title VII for acts occurring within the 300 day period before her administrative charge was filed. That calculation would have limited her Title VII recovery to acts committed after March 19, 1994. We also held that the two year limitations period for Iowa personal injury cases provided the recovery period for her § 1981 claims for punitive damages, see Madison, 257 F.3d at 797, but that those claims needed to be remanded due to "faulty instructions on the period for which Madison could recover." Id. at 804. Since the two year statute runs from the date Madison filed her action, only acts occurring after September 18, 1994 could support damages.

Because the district court had instructed that Madison could recover for conduct occurring after January 13, 1993, her punitive damages awards might have been based on untimely conduct under then existing federal law. We therefore reversed and remanded that part of her case for a new trial. We rejected Madison's cross appeal on the constitutionality of 42 U.S.C. § 1981a(b)(3), and vacated her award of attorney fees, costs, and interest for further consideration since it had been based in part on her punitive damage claims.

Both parties filed unsuccessful petitions for rehearing en banc in September 2001, and IBP moved in the district court on October 11 to continue a stay of execution on Madison's money judgment. Later that month, we granted a motion by Madison to recover appeal costs, expenses, and attorney fees. Madison also applied to the district court to lift its stay and enforce that part of her judgment which had

been affirmed on appeal. After she filed her certiorari petition, the district court granted her motion to lift its stay of execution on February 26, 2002 and denied IBP's motion to continue the stay. Later IBP moved for approval of a supersedeas bond, and a stay was reinstated in March. We granted a supplemental application for appellant fees and costs in May 2002, and Madison moved again in the district court to lift the stay and enforce her judgment. Before any action on that motion was taken, the Supreme Court granted certiorari on June 17, 2002 and remanded the case to the court of appeals. Two days later the district court stayed further proceedings there.

## II.

Madison filed her petition for writ of certiorari to the United States Supreme Court on the question of "Whether a plaintiff who proves continuing violations of her civil rights under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq, and 42 U.S.C. § 1981, is entitled to recover punitive damages for conduct occurring outside the statute of limitations?" The Court addressed Madison's petition for certiorari on June 17, 2000 by a grant, vacate, and remand order (GVR). In the GVR the Supreme Court granted Madison's certiorari petition, vacated the judgment of this court with costs, and remanded for further consideration in light of National Railroad Passenger Corp. v. Morgan, 122 S. Ct. 2061 (2002).

The GVR clearly states that our judgment has been vacated and the case remanded for further consideration, but the parties otherwise contest its meaning. Madison contends that the judgment vacated by the Supreme Court is simply that related to punitive damages because the question in her petition asked only about the federal recovery periods for punitive damages in a continuing violation case. IBP argues in contrast that the order vacating the judgment covers all of Madison's awards. Neither side asks that we simply remand to the district court for its further consideration.

Madison's position appears to have expanded during the course of the post Morgan briefing. Her first submission focused on her awards under ICRA. She argued that her state law claims were not affected by Morgan, and she requested that the judgment affirming those awards be remanded with instructions to the district court to lift its stay of execution to allow her to enforce the surety's liability on the bond. Madison also now argues that the punitive damages she was awarded under federal law should be reinstated and that under Morgan she can recover for the entire period her hostile work environment existed. She further argues that she pled and proved a pattern and practice of discrimination and retaliation and that she proved that all constructive demotions were timely.

IBP contends that the entire case should be remanded for a new trial. It argues that further consideration in light of Morgan should not be limited to the question presented in Madison's certiorari petition. The whole case should be reconsidered it says, including whether the continuing violation doctrine still exists under Iowa law. For the first time, it now argues that Madison's ICRA claims must be remanded for a new trial because the jury was not asked to find that discrete acts of discrimination or an act contributing to a hostile work environment had occurred within 180 days of her administrative charge.

III.

In Morgan the Supreme Court spelled out the distinction between discrete acts of discrimination and hostile work environments and explained why they should have different limitation periods. Morgan was a Title VII case brought by an employee who alleged that he had been subjected to discrete discriminatory and retaliatory acts, as well as a racially hostile work environment. At issue was which acts Morgan could recover for and which were time barred. The Supreme Court held that in order to recover for a discrete retaliatory or discriminatory act (such as termination, refusal to hire, or failure to promote), Morgan would have had to file an EEOC claim within

180 or 300 days of that discrete act. Morgan, 122 S. Ct. at 2071. Because "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," the lower court had erred in applying the continuing violation doctrine to his claims of employment discrimination. Id. at 2072. Morgan's claim for hostile work environment was different, however, for such claims by their "very nature involve[] repeated conduct," and he could recover for the whole period as long as a charge had been filed "within 180 or 300 days of any act that [was] part of the hostile work environment." Id. at 2073, 2075.

Morgan significantly changed the federal law on recovery periods in hostile environment cases. Our court had held in Ashley that a plaintiff could only recover on a hostile work environment claim for acts which had occurred within the 300 day charge filing period of Title VII. See Ashley, 66 F.3d at 168 ("Relief back to the beginning of the limitations period strikes a reasonable balance between permitting redress of an ongoing wrong and imposing liability for conduct long past."). Now under Morgan, only a single act of discrimination or harassment need be shown to have occurred within the charge filing period because "[h]ostile environment claims are different in kind from discrete acts." Morgan, 122 S. Ct. at 2073. Because they involve repeated conduct, Title VII "in no way bars a plaintiff from recovering damages for that portion of the hostile environment that falls outside the period for filing a timely charge," but instead allows a plaintiff to recover for the entire period a hostile environment existed. Id. at 2075. Since the rule in Ashley had limited recovery for hostile work environment plaintiffs to discriminatory or harassing acts occurring within the charge filing period, the rule is contrary to Morgan and may no longer be applied.

Morgan only specifically addressed the recovery period for Title VII claims. It did not address the recovery period for claims of employment discrimination or harassment brought under § 1981 or under state employment law. IBP argues that the reasoning used in the Court's analysis should be extended to state law claims such as

Madison's. She argues on the other hand that <u>Morgan</u> does not extend to Iowa law, but that its reasoning should also apply to discrimination and harassment claims brought under § 1981. Conversely, IBP contends that claims under § 1981 are not affected by <u>Morgan</u> and that the preexisting limitations rule should be applied to them.

A.

IBP raises two points why Madison's awards under ICRA should not be reinstated. First, it predicts that the Iowa Supreme Court will apply <u>Morgan</u> to change its continuing violation doctrine to curtail the period of recovery for discrete acts of discrimination. Second, it raises a new argument about the jury instructions given at trial. For the first time it argues that the jury should have been asked to make specific findings about whether any act in the continuing violation had occurred within the 180 day period before Madison filed her charge. Although IBP did not request such instructions at trial or raise these issues on appeal, it contends they should now be considered in order "to promote fairness," citing <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 234 F.3d 558, 590 n.8 (Fed. Cir. 2000); <u>but see</u> <u>Kotler v. American Tobacco Co.</u>, 981 F.2d 7, 12–13 (1st Cir. 1992) (any power to reexamine all issues of remanded case should be exercised sparingly and only when necessary to avoid extreme injustice).

Madison responds that <u>Morgan</u> has no affect on her awards under Iowa law. She asserts there was sufficient evidence of a continuing violation under ICRA to uphold her awards and does not agree that the Iowa Supreme Court will change its continuing violation rule because of <u>Morgan</u>. She argues that ICRA should be interpreted in light of Iowa's clear preference for permitting a plaintiff to obtain a complete recovery. Furthermore, since she only sought certiorari on the issue of punitive damages, the GVR should be interpreted narrowly as just answering the question in her petition. She maintains that because IBP never appealed her judgment

-10-

for compensatory damages, backpay, benefits, and fees and costs on appeal, it was not affected by the GVR. It should therefore be remanded to the district court so that she may proceed to execute on it.

Madison's award under ICRA for compensatory damages, backpay, and benefits was affirmed in our earlier decision. We concluded that she had proved a continuing violation of her civil rights as protected by Iowa law and that there had been no error in the jury instructions with regard to her ICRA claims. After careful study, we conclude that the GVR does not affect this part of the case and that Morgan does not undermine Madison's award under ICRA.

The Supreme Court did not change Iowa law in Morgan. Its focus was on federal employment discrimination law and Title VII in particular. While Iowa looks to federal law for guidance when interpreting its own civil rights statutes, the Iowa Supreme Court has also declared that "[f]ederal law … is not controlling." Vivian v. Madison, 601 N.W.2d 872, 873 (Iowa 1999) (individual supervisory employee may be liable for discriminatory employment actions under ICRA even though Title VII does not authorize such claim); see also Franklin Mfg. Co. v. Iowa Civil Rights Comm'n, 270 N.W.2d 829, 831 (Iowa 1978) (ICRA protection against sex discrimination extends to employer's insurance plan excluding disabilities arising out of pregnancy, even though Title VII does not). One example which shows that Iowa does not always follow federal employment law was its decision not to change its recovery period for a continuing violation to correspond to the circuit rule adopted in Ashley. See Channon v. United Parcel Serv., Inc., 629 N.W.2d 835, 850–51 (Iowa 2001) (ICRA claims are not subject to all damage limitations of Title VII; to hold otherwise would limit Iowa's right to provide greater remedies under ICRA than those provided under federal law); see also Madison, 257 F.3d at 800; Leyen v. Wellmark, Inc., 94 F. Supp.2d 1034, 1038–39 (S.D. Iowa 2000). We see no reason to believe that the Iowa Supreme Court will now choose to abandon the reasoning of

Hy-Vee and its rule permitting full recovery for the period of a continuing violation, as long as one act that is part of it occurs during the statutory limitation period.

Under Hy-Vee a continuing violation may be established by "'a series of acts with one independent discriminatory act occurring within the charge-filing period'" or by maintenance of "'a system or policy which discriminates.'" Hy-Vee, 453 N.W.2d at 528 (internal citations omitted). The Hy-Vee continuing violation doctrine does not have one rule for a series of discrete discriminatory acts and another rule for hostile environments. In this respect it differs from Morgan. Madison can recover under Hy-Vee for the entire period of a continuing hostile work environment or a continuing series of discrete discriminatory acts, as long as one discriminatory act of the continuing violation occurred within the 180 day charge filing period provided by ICRA . See id. at 527; see also Iowa Code § 216.15 (2002).[2] Since Madison filed her original charge on January 13, 1995 and she proved a continuing violation, she could recover for the entire period as long as one discriminatory act occurred after July 17, 1994.

IBP argues in addition that Madison's compensatory awards cannot be upheld under ICRA because the jury was not required to find that an act of discrimination or

---

[2] Since the Iowa Supreme Court has specifically ruled that plaintiffs can recover damages for acts outside of ICRA's charge filing period when they are part of a continuing violation, this case is different from the situation in Minnesota where there is no such case law dealing with the Minnesota Human Rights Act (MHRA). See Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 327 F.3d 771 (8th Cir. 2003) (applying Morgan rule to recovery period for discrete acts of discrimination under MHRA). In Hy-Vee the Iowa court permitted recovery for discrete acts of failure to promote as long as one was during the charge period. 453 N.W.2d at 528–29. The only case we have found dealing with an ICRA claim after Morgan involved only individual acts of failure to promote rather than a continuing violation. See Austin v. United Parcel Serv., Inc., 2002 WL 31050867 (S.D. Iowa Sept. 13, 2002).

harassment contributing to a continuing violation occurred within the charge filing period. Although IBP was aware at trial that Madison's claims were being submitted to the jury under ICRA and that she was advocating that <u>Hy-Vee</u> permitted recovery for the entire period her rights were violated, it did not request a jury instruction requiring the type of findings it now says are necessary under ICRA. Neither did it object to the liability instruction given by the court. The only limitations issue under ICRA which IBP raised on its appeal urged application of the federal <u>Ashley</u> rule. It argued that Madison should only be able to recover under ICRA for acts within the 180 days before she filed her charge, rather than within the period of continuing violation. It raised no other issue about the jury instructions on liability under ICRA, and it raised no such issues in its petition for rehearing en banc nor did it attempt to take them to the Supreme Court.

Our earlier decisions based on state law are the law of the case, and that doctrine prevents relitigation of settled issues, <u>see</u> <u>UniGroup, Inc. v. Winokur</u>, 45 F.3d 1208, 1211 (8th Cir. 1995). Although the doctrine does not apply if "an intervening decision from a superior tribunal clearly demonstrates the law of the case is wrong," <u>Morris v. American Nat. Can Corp.</u>, 988 F.2d 50, 52 (8th Cir. 1993), IBP has not demonstrated that the Supreme Court's decision in <u>Morgan</u> clearly undermines our earlier rulings on issues of Iowa law. We see no need to consider arguments IBP now raises for the first time when the issues have been previously settled and no injustice results from following the law of the case.

Moreover, IBP's current claim about how the jury was instructed would be subject to plain error review at most because it failed to object at trial or raise the point on appeal. Settled issues should only be overturned if the substantial rights of a party have been prejudiced and there would otherwise be "a miscarriage of justice." <u>Rush v. Smith</u>, 56 F.3d 918, 922 (8th Cir. 1995); <u>see also</u> <u>Cross v. Cleaver</u>, 142 F.3d 1059, 1068 (8th Cir. 1998). We conclude that the nature and amount of record evidence of illegal conduct throughout the key periods, including evidence of

recurring racist remarks from March 1994 until August 1996 and ongoing incidents of sexual slurs and offensive touching between March 1994 and December 1996, show that as a matter of law at least one act of the continuing violation of Madison's rights occurred within the 180 day charge filing period of ICRA, that is between July 17, 1994 and January 13, 1995. Madison also proved a continuing violation of her rights based upon failure to promote and constructive demotion, and Iowa permits recovery for discrete acts just as for hostile work environments. See Hy-Vee, 453 N.W.2d at 528–29 (continuing violation included evidence that plaintiff was denied promotions and at least one denial was during the 180 day period). She was denied some twenty three promotions because of the hostility towards women workers at IBP and bias against women on the part of key managers, and she was forced to take a demotion in December 1994 to escape discrimination and harassment on the line. In light of the record here there was no substantial prejudice or miscarriage of justice for IBP because of Madison's recovery under ICRA.

Since the GVR was not issued on a question of state law and since Morgan did not change Iowa law, Madison is entitled to reinstatement of her awards under ICRA. We note in addition that nothing has undermined the law of the case as to these claims. That part of our judgment awarding her compensatory damages, backpay, and benefits under ICRA, as well as the associated fees and costs previously granted, should therefore be reinstated. IBP has not addressed Madison's request to have the stay of execution lifted in the district court and has given no reason why that motion should not be granted, and we conclude in light of the record that Madison should be able to proceed to recover on her state claims proven during this protracted litigation.

B.

Madison argues that since Ashley has been effectively overruled by Morgan, the punitive damages awarded in the district court for her Title VII hostile work environment claims should be reinstated, as well as those awarded on her other claims

of racial discrimination and harassment, retaliation, and constructive demotion.[3] She also contends that <u>Morgan</u> should have the same effect on hostile environment claims under § 1981 as under Title VII. Since she proved a racially hostile environment existed from almost the time she started work at IBP up to the time of trial, she is entitled to the punitive damages awarded. She further contends that she can recover under federal law for discriminatory demotions within the relevant recovery period[4] and for a pattern and practice of discrete acts of discrimination and retaliation.

IBP argues that Madison's punitive awards should not be reinstated because <u>Morgan</u> does not remedy the trial court's erroneous instruction on the recovery periods under federal law, which previously caused us to vacate the punitive damage awards. It contends that the issues of liability and damages are intertwined so all must be retried, citing <u>Ryko Mfg. Co. v. Eden Servs.</u>, 823 F.2d 1215, 1240 (8th Cir. 1987). IBP further argues that <u>Morgan</u>'s rule for Title VII, permitting recovery for the entire period of a hostile work environment, is due to unique aspects of that

---

[3] The jury awarded Madison punitive damages in the amount of $2,069,000. That award included $364,000 for sex discrimination, $30,000 for racial discrimination, $600,000 for sexual harassment, $900,000 for racial harassment, $150,000 for retaliation, and $25,000 on her constructive demotion claim. The district court adjusted the jury awards by applying the Title VII damages limitation to reduce the punitive damages for sex discrimination and harassment from a total of $1,074,000 to $300,000. <u>See</u> 42 U.S.C. § 1981a(b)(3)(D). The court also concluded that the Title VII damages cap need not apply to the punitive awards for constructive demotion and retaliation since there was evidence to support them under § 1981. Judgment was then entered in the total amount of $1,638,417. <u>See</u> <u>Madison</u>, 257 F.3d at 791–92.

[4] Although she now contends that all her damages for constructive demotion were based on incidents beginning in December 1994, she argued at trial and on IBP's appeal that the first constructive demotion had occurred sometime in March 1994. That demotion was untimely even under the two year statute of limitations for § 1981 which began to run in September 1994.

-15-

statute and does not apply to § 1981. It contends that a plaintiff can only recover under § 1981 for hostile environment acts occurring within the limitations period. IBP also asks us to address punitive damage issues not discussed in our previous opinion.[5]

Madison's petition for certiorari sought a ruling from the Supreme Court on whether a plaintiff can recover punitive damages for a continuing violation beyond the statutory limitations period under both Title VII and § 1981, but Morgan spoke directly to her question only in respect to Title VII. Although IBP argues that Morgan does not apply to § 1981, we have applied similar standards to claims for intentional employment discrimination under both Title VII and § 1981. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002); Kim v. Nash Finch Co., 123 F.3d 1046 (8th Cir. 1997). The two statutes have "substantially identical[] legal theories of recovery" and "[t]he standard for punitive damages is the same" under each. Kim, 123 F.3d at 1063. Morgan did not draw on any peculiarities in Title VII or its statutory language. Rather, in explaining the reasons for treating discrete act claims under Title VII different from hostile environment claims, the Court emphasized the distinction between the two types of claims. They should be treated differently because discrete acts "are easy to identify" and each act "constitutes a separate actionable 'unlawful employment practice,'" whereas hostile environment claims by their "very nature involve[] repeated conduct." See Morgan,

---

[5] All punitive damage issues in need of resolution have been discussed. We previously held that Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999), provided the standard for punitive damages and that there had been sufficient evidence to submit punitive damages to the jury under that standard. Arguments not addressed were that the punitive damage awards were excessive, that the trial court erred by excluding evidence of IBP's good faith efforts, and that the jury instructions were inadequate in respect to IBP's good faith defense. These points need not be elaborated on now because the awards have been vacated, IBP is entitled to a new trial, and we have previously discussed the governing legal principles, including the relevance of an employer's good faith efforts.

122 S. Ct. at 2073. Because § 1981 allows for recovery for the same type of employment discrimination as Title VII, we believe that the distinction between discrete acts and hostile work environment claims should have equal effect on the respective recovery periods for the two statutes.

Previously we vacated Madison's punitive damage awards because the district court had not applied the law that then applied for determining the recovery period for her federal claims. Then current law limited recovery under Title VII, to acts occurring within the 300 days before her charge was filed, and under § 1981, to acts occurring within the two years before her action was filed. After <u>Morgan</u> that recovery rule still applies to claims under federal law for discrete acts of discrimination.[6] <u>Morgan</u> broadened the recovery period for hostile work environment claims under Title VII, however, and also we conclude under § 1981. Thus, under federal law one act of the hostile work environment must occur within the charge filing period for Title VII or within the § 1981 statute of limitations period. If that requirement is met, a party may then recover for all illegal acts that made up the hostile work environment. Since the trial court's instruction on the recovery periods under federal law were not consistent with <u>Morgan</u>, Madison's punitive damage awards cannot be reinstated and must be remanded for a new trial.

---

[6] Under <u>Morgan</u>, an individual act of discriminatory termination or denial of tuition remission occurring outside the filing period may not be time barred if there is evidence that the act is connected to a series of separate acts which make up a hostile work environment. <u>See</u> <u>Diaz v. Swift-Eckrich, Inc.</u>, 318 F.3d 796, 798–99 (8th Cir. 2003); <u>see also</u> <u>Saulsberry v. St. Mary's Univ. of Minnesota</u>, 318 F.3d 862, 866 (8th Cir. 2003). The key is whether the particular event "constitutes its own unlawful employment practice," <u>see</u> <u>Mems</u>, 327 F.3d at 785, or is an act which is part of " a series of separate acts, which together constitute the unlawful employment practice." <u>Id.</u>

## VI.

After further consideration of this case in light of <u>Morgan</u> and renewed study of the record, we reinstate Madison's compensatory damages, backpay, and benefit award under Iowa law, as well as her related award of appellate fees and costs. On remand the district court shall lift the stay of execution on these awards so the judgment on them may be enforced. Madison's claims for punitive damages are remanded for a new trial under federal law as clarified by <u>Morgan</u>. The case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.