462 F.Supp.2d 1012 (2006)
James COPELAND, Plaintiff,
v.
HUSSMANN CORPORATION, et al., Defendants.
No. 4:06CV839 JCH.
United States District Court, E.D. Missouri, Eastern Division.
October 26, 2006.
*1013 *1014 *1015 James N. Foster, Jr., McMahon Berger, St. Louis, MO, for Defendant.
Gene P. Graham, Jr., Deborah Blakely, White, Allinder, Graham & Buckley, L.L.C., Independence, MO, for Plaintiff.

ORDER
HAMILTON, District Judge.
These Matters are before the Court on Defendants Hussmann Corporation ("Hussmann") and Ingersoll-Rand Company's ("Ingersoll") Motion to Dismiss (Doc. No. 6), filed June 7, 2006, and Defendants Hussmann and Ingersoll's Motion for Costs of Previously Dismissed Action (Doc. No. 8), filed June 7, 2006. The matters are fully briefed and ready for disposition.

*1016 BACKGROUND

Plaintiff James Copeland ("Copeland") began his employment with Hussmann in September 1996 and was terminated on October 21, 2003. (Compl. ¶ 10-12). Plaintiff, an African-American male, alleges that throughout his tenure at Hussmann he was subjected to acts of racial discrimination and harassment, was passed over for promotion on three occasions, and was ignored by management when he complained about the racist atmosphere. (Pl.'s Memo. in Opposition to Def.'s Mot. to Dismiss ("Response"), Doc. No. 12).
Plaintiff's allegations of racial discrimination are as follows. In. October 1996, Gary Myers ("Myers") a white employee who allegedly had a racial animus towards Plaintiff, called Plaintiff "a low-life motherfucker." (Compl., Doc. No. 1 ¶ 14). Pat Landwehr ("Landwehr"), Plaintiff's white supervisor, learned of these comments but did not punish Myers. In February 1998, Plaintiff applied for a promotion for which he was eligible; however, a white individual was chosen instead of him. (Id. at ¶ 15). Plaintiff believes this choice was motived by his race. In June 1998, Earl Bail ("Bail"), a white forklift driver, was having a disagreement with an African-American forklift driver. (Id. at ¶ 16). Shortly thereafter, Bail stated over the office radio that "I can fix him, if someone brings the truck, I will bring the rope."[1] (Id.). Plaintiff complained to Landwehr, who promised that Bail would not be allowed to use a forklift or the company radio again; however, Bail was using it again within three weeks. (Id. at ¶ 18-19). In March 2000, Plaintiff again applied for a promotion. His supervisor, a white male, passed him over for a white worker even though Plaintiff was more qualified. (Id. at ¶ 20). In March 2001, Plaintiff applied for a promotion for the third time. Again his white supervisor passed him over. This time an African-American male was given the job, but was demoted two years later. (Id. at ¶ 20).
In May 2001, Copeland and Bill Gorry ("Gorry"), a white male, began working together after Copeland was asked to train him. (Id. at ¶ 22). Evidently, Gorry had a history of racial animus and Plaintiff alleges that over the course of the next two years,[2] Gorry engaged in a pattern of racist behavior. Shortly after they began working together, Plaintiff told Gorry that he did not like "black jokes;" in response, Gorry brought in a picture of a person in black-face and asked Plaintiff if it was his grandmother. (Id. at ¶ 25). Gorry refused to take the picture down and management took no action. (Id. at ¶ 26). Two weeks later, Gorry told Plaintiff "those niggers down there would like nothing more than to see me fired" and "Oh James you're not a nigger like those motherfuckers down there. You're a different kind. If my family had owned niggers like you, my family would be rich today." (Id. at ¶ 27-28). When Plaintiff complained to his white supervisor, Robert Pinkowski ("Pinkowski"), about these comments, Pinkowski appeared to get angry at Plaintiff. (Id. at ¶ 29). Plaintiff met with the head of human resources, Defendant Terry Herrington ("Herrington"), about this incident and was told by Herrington that he would make it clear Gorry was being punished because of Plaintiffs complaints.[3] (Id. at *1017 ¶ 33). Gorry's harassment continued, as he now believed he was immune from remedial action because Herrington would protect him. (Id. at ¶ 35-36).
In late 2002, Gorry asked Plaintiff if he wanted some fried chicken for lunch because "I know your people like fried chicken." (Id. at ¶ 39). Plaintiff complained to Pinkowski and another supervisor, Glenn Compton, who told Plaintiff he would "take care of it." (Id. at ¶ 40). Gorry was terminated on November 11, 2002; however, Plaintiff learned that he was terminated as part of a reduction in the work force and not because of his racist behavior. (Id. at ¶ 42-45).
In early 2003, Myers evidently threatened Plaintiff while Pinkowski looked on. (Id. at ¶ 45). No investigation occurred and Myers received no sanction. Plaintiff also alleges that he repeatedly complained of racist graffiti in the bathroom, but nothing was done about it.[4] (Id. at ¶ 47-49). Plaintiff was terminated on October 21, 2003 and believes the termination was retaliation for his complaining about the hostile work environment. (Id. at ¶ 50). Plaintiff was replaced by a white female. (Id. at ¶ 52).
Plaintiff's case also has an extensive procedural history. Plaintiff filed a Chapter 13 bankruptcy petition on March 2, 1999. (Response, pg. 2). Plaintiff's bankruptcy schedules did not include any potential lawsuits against Defendants. (Id.). The bankruptcy court confirmed Plaintiff's plan on May 12, 1999. (Id.). Plaintiff was discharged from bankruptcy on December 10, 2003 and the Trustee completed his final report and accounting on February 11, 2004. (Id.). The bankruptcy case was closed on February 24, 2004. (Id.).
On February 3, 2004, Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights against Defendants and received a right to sue notice on August 3, 2004. (Memo. in Supp. of Def's Mot. to Dismiss, Doc. No. 7 pg. 2). On May 28, 2004 Plaintiff filed a petition in Missouri state court, alleging Defendants violated the Civil Rights Act, 42 U.S.C. § 1981. (Id.). That action was removed to this Court and was voluntarily dismissed by the Plaintiff on October 29, 2004. (Id.). Before Plaintiff voluntarily dismissed that action, Hussmann and Ingersoll removed the case to this Court, filed an answer, and filed two motions to dismiss. (See Docket for 4:04-cv-00832-JCH). No discovery, written or otherwise, had occurred by the time of dismissal. (Pl.'s Suggestions in Opp. to Def.'s Mot. for Costs, Doc. No. 13 pg. 6). On August 30, 2004 Plaintiff filed another action in Missouri state court, this time alleging that Defendants had violated the Missouri Human Rights Act. (Id.). On May 18, 2005, Defendants filed a Motion to Dismiss for Lack of Standing,[5] or in the Alternative, by Judicial Estoppel. (Id. at pg. 3). On June 9, 2005 the state court granted Defendant's motion based on the lack of standing argument and denied the judicial estoppel argument as moot.[6] (Id.)
On March 6, 2006, Plaintiff filed a Motion to Reopen his Chapter 13 case with the bankruptcy court so that he could amend his schedules to add the discrimination claims against the Defendants. (Id. at *1018 pg. 4). On March 9, 2006, the bankruptcy court granted Plaintiff's motion, but his request to determine that the discrimination claims were not property of the estate was denied. (Id.). On March 13, 2006, Plaintiff filed his amended schedules containing the discrimination claims. (Id. at pg. 5). The bankruptcy court closed the case on April 4, 2006 after the Trustee filed a response stating that he had no objection to the filing of amended schedules and was not going to take further action on the case. (Id. at Ex. I). Plaintiff filed this present action for discrimination, harassment, and retaliation, in violation of 42 U.S.C. § 1981, on April 18, 2006 in Missouri state court. It was removed to this Court on May 31, 2006. (Notice of Removal, Doc. 2).
As stated above, Defendants Hussmann and Ingersoll[7] filed this Motion to Dismiss on June 7, 2006. (Doc. No. 6). Hussmann and Ingersoll argue that this Court should invoke the doctrine of judicial estoppel and dismiss all of the Plaintiff's claims. Alternatively, they argue that all of Plaintiff's claims based on incidents occurring before 2002 are time barred and that Plaintiff's disparate impact claims are beyond the scope of § 1981. Finally, Hussmann and Ingersoll argue that they are entitled to an award of attorney's fees under Federal Rule of Civil Procedure 41(d) because Plaintiff's present cause of action is the same as the one that he voluntarily dismissed in 2004.

MOTION TO DISMISS STANDARDS
In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir.2005). A cause of action should not be dismissed for failure to state a claim unless, from the face of the Complaint, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Jackson Sawmill Co., Inc. v. United States, 580 F.2d 302, 306 (8th Cir.1978). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir.1982) (internal quotations and citation omitted).

DISCUSSION
I. Motion to Dismiss
A. Judicial Estoppel
The purpose of judicial estoppel is to "protect the integrity of the judicial process." Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir.2006), citing Total Petroleum, Inc. v. Davis, 822 F.2d 734, 738 n. 6 (8th Cir.1987), and prevent parties from playing "fast and loose with the courts to suit the exigencies of self interest." In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir.1999). A court invokes judicial estoppel when a party abuses the judicial process by making a knowing misrepresentation to the court or tries to perpetrate a fraud upon the court. Id. Accordingly, judicial estoppel prevents a person who states facts under oath from denying those facts in a second suit, even *1019 if the parties in the second suit are not the same as the first. Monterey Dev. Corp. v. Lawyer's Title Ins. Corp., 4 F.3d 605, 609 (8th Cir.1993).[8] Judicial estoppel, however, is an extraordinary remedy and should only be applied when a party's inconsistent behavior will result in the miscarriage of justice. Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir.1996).
The Supreme Court has stated that judicial estoppel is a flexible doctrine that is "probably not reducible to any general formulation of principle." New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Supreme Court has outlined three factors typically used to determine the applicability of judicial estoppel. Id. First, a party's later position must be "clearly inconsistent with its earlier position." Id. Second, a party must have succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position would create a perception that either the first or second court was misled.[9]Id. Finally, courts look at whether the party seeking "to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751, 121 S.Ct. 1808.
In Stallings v. Hussmann, the Eighth Circuit recently explained how to apply these principles in the context of bankruptcy. Stallings, 447 F.3d at 1047. The first factor is satisfied if a cause of action is not raised in a reorganization plan or not otherwise mentioned in the debtors schedules. Id., citing Coastal, 179 F.3d at 208. The second factor is satisfied if the bankruptcy court adopted the debtor's position. Stallings, 447 F.3d at 1048, citing In re Superior Crewboats, Inc., 374 F.3d 330 (5th Cir.2004). This occurs, for example, when the bankruptcy court discharges the claims under the belief that no claims exist outside those cited on the schedules. See Stallings, 447 F.3d at 1048 (discussing cases that stand for this general proposition). This idea is reinforced by bankruptcy courts' heavy reliance on accurate disclosure statements. See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir.2002); see 11 U.S.C. § 521 (listing debtor's duties). The third factor is satisfied, for example, when a debtor files a bankruptcy petition, then receives a right to sue, letter from the Equal Employment Opportunity Commission and fails to amend his schedules to add the lawsuit. Stallings, 447 F.3d at 1048, citing De Leon v. Comcar Indus., 321 F.3d 1289, 1291-92 (11th Cir.2003).
The third factor, however, is not satisfied if the debtor's prior position was taken "as a good faith mistake rather than as part of a scheme to mislead." Stallings, 447 F.3d at 1049, citing Ryan Operations G.P., 81 F.3d at 363-65. Otherwise, the scope of judicial estoppel would be unduly expanded and would prevent permissible, viable claims. Id. The mere fact that non-disclosure occurred in a bankruptcy proceeding is not enough; something more than careless or inadvertent non-disclosures are needed. Id. A failure to disclose is only inadvertent when the *1020 debtor "lack[ed] knowledge of the undisclosed claims or has no motive for their concealment." Id. at 1048, citing Coastal, 179 F.3d at 208 (emphasis in original).
The Plaintiff's actions clearly satisfy the first factor outlined in New Hampshire. Here, as in Stallings, Plaintiff failed to amend his bankruptcy schedules to include possible claims against Defendants. Plaintiff argues that this factor has been negated because he reopened his bankruptcy case and amended the schedules. A split has developed between courts about the viability of this argument. There is some authority for the proposition that a debtor who omits a claim can negate a judicial estoppel defense by reopening the bankruptcy case and amending the schedules. In re Daniel, 205 B.R. 346 (Bankr.N.D.Ga.1997); Lampl v. Smith, 169 B.R. 432 (D.Colo.1994). Other courts have come to the opposition conclusion, based largely on the idea that it would be inequitable to allow the debtor to amend his schedules after his mistake is pointed out by an adversary because it diminishes the incentive to make disclosures in bankruptcy. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir.2002); see also In re Superior Crewboats, Inc., 374 F.3d 330, 336 (5th Cir.2004); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 321 (3d Cir. 2003). The Court finds the latter position persuasive and will not treat the Plaintiff's amended schedules as negating Defendant's judicial estoppel argument.
The second New Hampshire factor is also met in this case. There was judicial acceptance of Plaintiff's inconsistent position because the bankruptcy court relied on the Plaintiff's schedules in confirming his Chapter 13 plan and closing his bankruptcy case.
The Court believes that the third factor is not met because Plaintiff's actions, when viewed in the light most favorable to him, do not indicate an intentional manipulation designed to flaunt the judicial process. A previous Eastern District of Missouri opinion held an allegation that a Chapter 13 debtor has secret motives to secret assets is a dubious claim at best, given that Chapter 13 creditors are repaid out of the debtors income. EEOC v. Apria Healthcare Group, Inc., 222 F.R.D. 608, 613 n. 3 (E.D.Mo.2004). Second, the Eighth Circuit in Stallings did not find the debtor intentionally misled the courts because he did not have knowledge that his claims were viable. Specifically, the debtor received an adverse decision from the United States Department of Labor finding that he was properly terminated. Stallings, 447 F.3d at 1049. Following this logic, Plaintiff may not have known his claim was viable until he received his right to sue letter after the bankruptcy estate closed. Additionally, Plaintiff is not a legally sophisticated party and relied on his attorney to explain to him how to fill out the bankruptcy schedules properly. See Taylor v. Comcast Cablevision of Ark., Inc., 252 F.Supp.2d 793, 796-97 (E.D.Ark.2003) (finding an unsophisticated legal party that mistakenly omitted a claim on his bankruptcy schedule would not be judicially estopped from bringing the omitted claim because his attorney did not properly explain the forms to him). Evidently, the Plaintiff's attorney did not inform the Plaintiff that possible causes of actions must be disclosed on the bankruptcy forms. (Response, Doc. No. 12 pg. 7). In light of the standards for a motion to dismiss and the extraordinary nature of this remedy, the Court finds judicially estopping the Plaintiff at this stage of the litigation is unwarranted.
B. Statute of Limitations for § 1981
The Supreme Court has held that the four year "catch-all" statute of limitations, 28 U.S.C. § 1658, applies to claims brought pursuant to Civil Rights Act of *1021 1991, 42 U.S.C. § 1981. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004); Jackson v. Homechoice, Inc., 368 F.3d 997, 999 (8th Cir.2004). The Supreme Court has also explained that claims of discrete actions and claims of hostile work environment are treated differently when applying the statute of limitations. Nat'l R.R. Passenger Co. v. Morgan, 536 U.S. 101, 110-114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).[10] A discrete action "occurred on the day it happened and constitutes its own unlawful employment practice." Mems v. City of St. Paul. Dept. of Fire & Safety Servs., 327 F.3d 771, 785 (8th Cir. 2003). Accordingly, discrete discriminatory acts are not actionable if time barred, "even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113, 122 S.Ct. 2061; see also Wedow v. City of Kansas City, 442 F.3d 661, 670 (8th Cir.2006) (explaining "each occurrence starts a new clock for purposes of filing charges related to that act."). Morgan held that discrete acts, "such as termination [and] failure to promote ... are easy to identify" and that "each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Id. at 114, 122 S.Ct. 2061.
Claims of a hostile work environment, however, are different than discrete acts. Id. at 115, 122 S.Ct. 2061. Specifically, they cannot occur on a single day; instead they occur over a series of days or perhaps years. Id. For purposes of a hostile work environment claim:
It does not matter ... that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for determining liability.
Id. at 117, 122 S.Ct. 2061. In short, individual acts that make up a hostile work environment claim are not separated from the whole for purposes of timely filing. Id. at 118, 122 S.Ct. 2061. An employee, however, may not recover for previous acts of harassment if the later act "has no relation" to the previous one or "for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile work environment claim." Rowe v. Hussmann Corp., 381 F.3d 775, 779-80 (8th Cir.2004), (citing Morgan, 536 U.S. at 118, 122 S.Ct. 2061) (internal quotations omitted). The Eighth Circuit has found that a seven month hiatus in harassment is not enough to cause a break in the hostile environment. Rowe, 381 F.3d at 780; see also Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349, 356 (8th Cir.1997) ("not infrequent" racist comments over the course of two years creates hostile work environment). Conversely, a roughly two year time gap does dissipate the connection between incidents. Gipson v. KAS Snacktime Co., 171 F.3d 574, 580 (8th Cir.1999); see also Kline v. City of Kansas City, Fire Dept., 175 F.3d 660, 666 (8th Cir.1999) (series of events ending in 1986 and individual incidents that occurred in 1989 and 1993 did not create a hostile work environment). Aside from length of time, a Court is to look at whether the same harasser is involved, whether the acts are similar in nature and severity, whether the employer knew of the harassment, and if there was an intervening act. Rowe, 381 F.3d at 779-80.
*1022 Here, it is clear that Plaintiff's claim of unlawful termination is not time barred. It occurred in 2003 and the Plaintiff filed his Complaint well within the four year statute of limitations. It is also clear that Plaintiffs claims of being improperly passed over for promotion are time barred. As the Supreme Court has clearly stated, failure to promote is a easily identified as a discrete action. Morgan, 536 U.S. at 114, 122 S.Ct. 2061. Accordingly, the Plaintiff must file within four years from the date on which that discrete act occurred. Plaintiff claims he was passed over for promotion in February 1998, March 2001, and March, 2001. Thus, he had until February 2002, March 2004, and March 2005, respectively, to file his failure to promote causes of action. Plaintiff did not file his failure to promote actions until April 18, 2006, well outside the statute of limitations. Accordingly, Plaintiff's failure to promote claims are time barred.
Plaintiff's claims of a hostile work environment that center around the behavior of Gorry are not time barred. Plaintiff alleges a pattern of harassment by Gorry that created a hostile work environment. Although the alleged harassment by Gorry began outside the limitations period, it continued into the limitations period. Specifically, reading the Complaint in the light most favorable to Plaintiff, it continued until Gorry's termination in November, 2002. Thus, Plaintiff's hostile work environment claims were filed within the four year statute of limitations.
The Court believes that the incident with Myers in 1996 and the incident with Bail in 1998 are time barred because they are unrelated to the other hostile work environment claims. Both incidents occurred more than three years before the problems with Gorry arose. Additionally, calling Plaintiff a "low life motherfucker" is not particularly similar to the more offensive, clearly racial comments allegedly made by Gorry. Unlike Gorry's comments, Bail's comments were not directed at Plaintiff. Finally, Plaintiff had a different supervisor during 1996-1998 than he did when the Gorry harassment took place. When all of these factors are combined, these incidents do not fall within the Plaintiff's claim of a hostile work environment and are time barred because they occurred well outside the four year statute of limitations. Accordingly, Defendants Motion to Dismiss will be granted as it pertains to Plaintiffs failure to promote claims and denied as it pertains to Plaintiff's retaliation and hostile work environment claims.
C. Disparate Impact Claims under § 1981
Defendants contend that the following allegations in the Complaint make a claim for a disparate impact action under § 1981:
51. Throughout Plaintiff's employment Defendants discriminated against African Americans and failed to hire African Americans in proportion to their representation in the labor pool.
52. Plaintiff's position was not eliminated, but was immediately filled by a young Caucasian female ... who was junior to Plaintiff.
58. Throughout Plaintiff's term of employment with Defendants, Plaintiff and other African American Employees were continuously subjected to discriminatory terms and conditions of employment by Defendants based on Plaintiff's race  African American.
Defendants argue that these paragraphs must be dismissed because they do not allege intentional discrimination.[11] Plaintiff *1023 argues, that under the liberal standard of a motion to dismiss, these paragraphs do allege intentional discrimination.
The Supreme Court has held that only claims of purposeful or intentional discrimination are actionable under 42 U.S.C. § 1981. Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 388-89, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). The Eighth Circuit has explained that General Building "eliminated from § 1981's sphere of liability those cases that have a disparate impact upon racial minorities unless that impact can be traced to discriminatory purpose." Edwards v. Jewish Hosp. of St. Louis, 855 F.2d 1345, 1351 (8th Cir.1988). The Court fords that, when viewed in the light most favorable to Plaintiff, paragraphs 51, 52 and 58 sufficiently allege intentional discrimination to support a finding of disparate impact. Furthermore, these paragraphs cannot be read in a vacuum. Plaintiff has alleged numerous actions by the Defendants that signal an atmosphere of intentional racial discrimination. Accordingly, Defendant's motion as it pertains to these paragraphs is denied.
II. Motion for Costs of Previously Dismissed Action.
Defendants argue that this Court should award it costs, including attorney's fees, for the action dismissed in 2004 and that the litigation should be stayed until Plaintiff pays Defendants the costs owed to them. Plaintiff argues that courts are split on whether attorney's fees may be awarded in this situation, are discretionary, and that the Court should not award them in this case.
Federal Rule of Civil Procedure 41(d) states:
If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.
The purpose of this rule is deter forum shopping and vexatious litigation. Simeone v. First Bank Nat. Ass'n, 971 F.2d 103, 108 (8th Cir.1992). The cases are split, however, about whether the word "costs" include attorney's fees. A majority of cases have found that they do. Evans v. Safeway Stores, Inc., 623 F.2d 121 (8th Cir.1980) (affirming an award of attorney's fees under Rule 41(d) without discussion).[12] *1024 Other Courts have held that the plain language of Rule 41(d) does not include attorney's fees. Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 874-75 (6th Cir.2300); Lawson v. Toney, 169 F.Supp.2d 456, 466 (M.D.N.C.2001); Simeone v. First Bank Nat'l Ass'n, 125 F.R.D. 150, 155 (D.Minn. 1989). Finally, Seventh Circuit has held that attorney's fees are not available under Rule 41(d) unless the underlying cause of action authorizes attorney's fees. Esposito v. Piatrowski, 223 F.3d 497, 501 (7th Cir. 2000) (extending the Marek holding to Rule 41(d)), citing Marek v. Chesny, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).[13] The Court, following the Eighth Circuit's ruling in Evans and the majority of other courts, holds that Rule 41(d)'s language of "costs" includes attorney's fees. Furthermore, even if this Court applied Esposito, attorney's fees could still be awarded because 42 U.S.C. § 1988(b) authorizes the awarding of attorney's fees in a § 1981 action.
This Court, however, is not prepared to make a blanket award of all attorney's fees and costs incurred by Defendants in the previously dismissed action. While it does appear that the Plaintiff was forum shopping, the Court believes that costs should only be awarded for the work done by the Defendants in the previous case that is now useless in this case. See Esquivel v. Arau, 913 F.Supp. 1382, 1388 (C.D.Cal. 1996) (holding that attorney's fees will only be awarded for work that was rendered useless by the dismissal of Plaintiff's previous action).Otherwise, the Plaintiff will effectively pay for part of the Defendants' defense. Rule 41(d) is not aimed at making the Plaintiff pay for the Defendants' defense; rather it is aimed at repaying frivolous work done by the Defendants. If the Defendants can reuse it, it is obviously not useless.
First, the Court will not award attorney's fees and costs related to Defendants' Motion to Dismiss Hussmann Corporation (previously dismissed action, Doc. No. 14) because it contains arguments similar to those used in the Motion to Dismiss presently before the Court. Obviously, this work was not useless, as it appears the Defendants recycled most of their work. Second, the Court will not award costs and attorney's fees associated with Defendants' Motion to Dismiss Ingersoll-Rand Company (previously dismissed action, Doc. No. 12). In that motion, Defendants argued that Ingersoll should not be a party because it never employed Plaintiff. Defendants have not abandoned this position and the Court cannot conclusively say that this work has been rendered useless. (Memo. in Supp. of Def.'s Mot. for Costs of Previously Dismissed Action, Doc. No. 9 fn. 1). This Court will also not award attorney's fees for an Answer to the Plaintiff's Complaint as it appears the Complaints from the 2004 action and the 2006 action are identical, and Defendant's Answer, at most, will change slightly. The Court, however, will award attorney's fees for any work done in the previously dismissed case that is useless in the present case. The Court will grant the Defendant leave to file a motion for attorney's fees that is consistent with this order and which contains a summary of its attorney's fees and costs incurred in 4:04-cv-00832-JCH that have been rendered useless by the filing of this case.

*1025 CONCLUSION

Accordingly,
IT IS HEREBY ORDERED that Defendants Hussmann Corporation and Ingersoll-Rand Company's Motion to Dismiss is GRANTED in part, and Plaintiff's failure to promote claims and claims based solely on the incidents of discrimination occurring in 1996 and 1998 are dismissed.
IT IS FURTHER ORDERED that Defendants Hussmann Corporation and Ingersoll-Rand Company's Motion to Dismiss as it pertains to Plaintiff's other claims is DENIED.
IT IS FURTHER ORDERED that Defendants Hussmann Corporation and Ingersoll-Rand Company's Motion for Costs of Previously Dismissed Action (Doc. No. 8) is GRANTED and Defendants have until Thursday, November 9, 2006 to file a motion for attorney's fees and costs that is consistent with the instructions in this order.
NOTES
[1] This statement was a reference to an incident in Texas where an African-American had been tied to a car and dragged to death. (Compl., Doc. No. 1 ¶ 16).
[2] While the Complaint does not specifically state that it occurred over two years, the Complaint implies that the behavior occurred from 2001 to 2002.
[3] Harrington and Gorry are allegedly friends. (Compl., Doc. No. 1 ¶ 33). Harrington also denies ever having this conversation with Plaintiff. (Id. at ¶ 38).
[4] The graffiti contained harsh language. It stated "AIDS niggers go back to Africa" and "kill niggers." (Compl., Doc. No. 1 ¶ 49).
[5] Defendants argued that Plaintiff failed to disclose his discrimination claims during the bankruptcy and that because these claims would have been property of the bankruptcy estate, only the Trustee could bring an action on these claims.
[6] The case was not actually dismissed until August 18, 2005 because the Court gave the Plaintiffs an opportunity to amend its pleadings to include all appropriate parties.
[7] These motions were only brought by Defendants Hussmann and Ingersoll. When the Court uses the words "Defendants" in its discussion, it is only referring to Hussmann and Ingersoll.
[8] For examples of cases from other circuits that explain the general tenets of judicial estoppel, see SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1290 (Fed.Cir.2005); Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32-33 (1st Cir.2004); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir.2002); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784 (9th Cir.2001);
[9] The Supreme Court explains that a lack of success in the prior proceeding means- that a party's later inconsistent position introduces "no risk of inconsistent court determinations and thus poses little threat to judicial integrity." New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808 (internal citations omitted).
[10] Morgan discusses the statute of limitations for a Title VII claim. The Eighth Circuit has held that the distinction between discrete acts and hostile work environment claims are analyzed in the same manner under both Title VII and § 1981. Madison v. IBP, Inc., 330 F.3d 1051, 1060 (8th Cir.2003).
[11] Defendant also argues that language in paragraph 5 stating that "Plaintiff's petition is filed pursuant to 42 U.S.C. § 1981 on behalf of Plaintiff and all those similarly situated" should be struck. Plaintiff does not address Defendants' request regarding paragraph 5. The Court will treat this request as a motion to strike. Federal Rule of Civil Procedure 12(f) governs motions to strike, and provides that, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The district court enjoys "liberal discretion" in deciding Rule 12(f) motions. Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc., 278 F.3d 742, 748 (8th Cir.2001) (citation omitted). "Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, [the Eighth Circuit has] previously held that motions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted." Stanbury Law Firm v. Internal Revenue Serv., 221 F.3d 1059, 1063 (8th Cir.2000) (internal quotations and citations omitted). Here, the Defendants have not provided the Court any reason why this language is immaterial, impertinent, or scandalous. Accordingly, Defendants' request is denied.
[12] Other cases holding that attorney's fees could be included in a Rule 41(d) awarding of costs include: Sanderson v. Spectrum Labs, Inc., 227 F.Supp.2d 1001, 1013-14 (N.D.Ind. 2000) aff'd, 248 F.3d 1159; Loubier v. Modern Acoustics, Inc., 178 F.R.D. 17, 22-23 (D.Conn.1998) (awarding attorney's fees based on Rule 41(d)); Esquivel v. Arau, 913 F.Supp. 1382, 1388-92 (C.D.Cal.1996) (awarding attorney's fees under Rule 41(d) after extensive discussion); Behrle v. Olshansky, 139 F.R.D. 370, 374 (W.D.Ark.1991) (finding attorney's fees are included in "costs" under Rule 41(d) because otherwise Rule 41(d) would have no teeth).
[13] In Marek v. Chesny, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1, the Supreme Court determined that attorney's fees would be allowed under Rule 68 if the substantive statute upon which the claim was based allowed attorney fees.